FRANKLIN W. BROOKS, PLAINTIFF IN ERROR, V. ABBIE E. DUTCHER, DEFENDANT IN ERROR.

1. **Slander.:** ISSUES : EVIDENCE. In an action for damages for defamation of·character, when the speaking of the words are admitted and their truth alleged in justification, it is error without prejudice to permit a witness to testify to the speaking of words of substantially the same meaning and import, and give as his understanding of the words used the same meaning as is charged in the petition and justified in the answer, that issue being settled by the pleadings.

2. **Error Without Prejudice.** Error cannot be predicated upon the ruling of a trial court admitting or excluding immaterial testimony, when it is apparent that no prejudice could result to either party, whatever the ruling might be.

3. **Evidence :** REPUTATION. When a witness is called for the purpose of testifying to the general reputation of a party for chastity, his examination-in-chief should be confined to general reputation, and not as to what particular persons, or how many, the witness may have heard speak of the person whose reputation is sought to be attacked.

4. **Instructions :** EXCEPTIONS. A general exception to instructions given is insufficient. Each specific instruction which is claimed to be erroneous must be distinctly pointed out and specifically excepted to.

5. **Evidence** examined, and *Held,* To sustain the verdict.

6. **A New Trial** will not be granted on the ground of newly discovered evidence, when such evidence is merely cumulative.

7. **Damages** awarded by the jury, *Held,* To be excessive.

ERROR to the district court for Holt county. Tried below before TIFFANY, J.

*M. P. Kinkaid* (*Cleveland & Meals* with him), for plaintiff in error.

*M. F. Harrington* and *B. L. Snow,* for defendant in error.

REESE, J.

The petition in this case alleged that on or about the 14th day of December, 1885, at the village of Atkinson, Holt county, Nebraska, plaintiff in error, with the intent and purpose of injuring defendant in error, and in a certain conversation which he had concerning her in the presence and hearing of a number of persons, falsely and maliciously did speak and publish certain defamatory words, by which he charged defendant in error with being a woman of bad character for chastity. The particular allegation of the petition being, that in said conversation he made use of the following language: "She," meaning the plaintiff, "is a whore." That she is a married woman, and that she sustained damages in the sum of $5,000.

Plaintiff in error filed an answer to this petition, by which he alleged the truth of the charge claimed to have been made by him. •

The cause was tried to a jury and resulted in a verdict in favor of plaintiff, and assessing her damages at the sum of $3,000. A motion for a new trial was made, which being overruled, judgment was rendered upon the verdict, and plaintiff brings error to this court.

At the commencement of the trial no question was presented to the court as to the order of trial and the introduction of testimony, or upon whom devolved the burden of proof; defendant in error assuming the burden, and proceeding with the trial as though the allegations of the petition were denied. Defendant in error was first placed upon the stand, but as no question is presented with reference to her testimony, it will not for the present be noticed.

The first question presented by the brief of plaintiff in error is, as to the examination of one F. E. Havens, a witness sworn upon the part of the plaintiff. The objection is, that the witness was improperly permitted to testify as to what his understanding of the language used by plaintiff

in error was—his answer being, "I understood from his language that she was a very bad woman—she was a whore." It was contended that the testimony was improperly received over the objection of plaintiff in error, and that the witness should be confined to a statement of the language used by plaintiff in error, instead of giving his understanding of what that language imported. It is not necessary to inquire here whether this testimony would have been competent under conditions other than those presented at the time of the trial. The allegations in the petition were, that in that conversation plaintiff in error charged defendant in error with being a prostitute. This allegation being admitted, and the truth of the charge alleged by the answer, disposes of any necessity of proving that the charge was made. The answer of the witness being simply that he understoood from the language used that plaintiff in error intended to convey a meaning which he by his answer, and by his whole defense upon the trial, says he did intend to convey, and which he alleged was true, could not be of any possible prejudice to him, even if erroneous, and, therefore, the judgment could not, for that reason, be reversed.

The same observation may be made as to the testimony of the witness Brady, in which he details a conversation with plaintiff in error, whereby he informed the witness that the house of plaintiff, being a hotel, was a very unsafe place to stay, owing to the fact that plaintiff and her husband were liable to try to "put up a job" on those who might go there. The question was asked, what kind of a "job"? His answer was, "To get her to sleep with him, as I understood him in his conversation."

I. F. Moon, being called as a witness, testified as to conversations had with plaintiff in error, and as to charges made by him against the chastity of defendant in error, and of his efforts to procure others to go to her house for the purpose of soliciting illicit intercourse with her, or as was

expressed by the witness, "Of testing her character." On cross-examination, the witness was asked if he knew the general reputation of the house kept by defendant in error about the time of the commencement of this action? He answered, "I do not." He was then asked to state if he did not, several times before the commencement of this action, ask Mr. Brooks (plaintiff in error) if he was getting much down at the Commercial House when he was boarding there? This was objected to as incompetent and immaterial, and the objection was sustained. This ruling of the court is now assigned for error.

We can see no error in the decision. The answer, whether in the affirmative or negative, could have had no effect upon the cause, or tend either one way or the other to increase or diminish plaintiff's defense. It was shown by the testimony that plaintiff in error had boarded at the house of defendant in error. The conversation as detailed by the witness showed that charges of unchastity were very frequently made against her by plaintiff in error. The simply asking of the question was wholly unimportant, and the answer of plaintiff in error thereto could not, in any view of the case, have been admissible. The ruling was therefore correct.

One James Cross was called as a witness by plaintiff in error in his defense, and testified in substance that about five years before the trial he boarded with defendant in error in the village of Bazile Mills; that upon one occasion during the absence of the husband of defendant in error, he came into the house, and was reading a paper; that she came in, sat down by him, and began to "knock" her knees against his, when he pinched them, and that she threw the bedroom door open, went in and laid down upon the bed; that he went into the room where she was lying, and made an improper proposal to her, which was resented with considerable force by her, the language of the witness being, "She kicked"; that the

next morning when he went to breakfast she asked him what he would give her to settle it, and not say anything to her husband about it, and that he told her he would not give her anything. The question was then asked, if he stated why he would not? This was objected to as incompetent and immaterial, and the objection was sustained. He was then asked to state the conversation in reference to the matter of settlement, and upon objection being made the testimony was excluded. The rulings of the court were excepted to and are assigned for error.

The issues presented by the pleadings were as to the truth or falsity of the charge of unchastity made by plaintiff in error. The witness Cross was evidently introduced for the purpose of sustaining this charge. It was competent, for that purpose, for him to testify to any facts which would tend to prove the defense. This he did without objection, but it was wholly immaterial to inquire as to what reasons he may have offered, or as to what might have occurred at a subsequent time, having no reference to the question under inquiry. Plaintiff in error offered to prove by the witness that a warrant was issued by the procurement of defendant in error; that he was pursued by an officer and arrested in Dakota territory, and compelled to pay $50.00 and the costs of prosecution in order to avoid arrest. But no proof was offered, even had it been competent, to show any connection of defendant in error with the alleged settlement, and of which she had previously testified she had no knowledge.

One John Williamson was called as a witness for plaintiff in error and interrogated as to the general reputation of defendant in error for chastity while she resided in Creighton, some four years prior to the time of the trial; and upon being asked if he was acquainted with her general reputation for chastity in the town and vicinity of Creighton, his answer was, that he did not think he had ever heard "most of the people say anything about it." He was

again requested to answer, by saying "Yes" or "No," as to whether he was acquainted with such reputation. His answer was, "I would have to say no, because I have never talked with most of the people." He was then asked what the "community at large, in the town of Creighton, said as to the reputation of this woman as to chastity?" His answer was, "I could not answer that, because I had enough to look after without that." He was then asked, "What did the people generally consider this woman to be? Did you know what her general reputation was for chastity at the time you lived there?" His answer was, "I don't know as I know of my own accord at all." Defendant in error then objected to the witness testifying, because he was incompetent to testify, and the objection was sustained, but no exception was taken. He was then asked to state if he knew anything of his own knowledge in regard to her character for chastity at the time she lived at Creighton. His answer was, "I do not." Upon being questioned as to his knowledge of her general reputation at the town of Atkinson, where she resided at the time of the trial, witness answered that he knew nothing of her reputation while at Atkinson, except what he had heard outside of the town. He was then asked what he had heard coming from the parties that had resided at Atkinson. Objection was made upon the ground that the witness had not shown himself competent, and the objection was overruled. Without requiring an answer to this question from the witness, plaintiff in error then offered to prove by him that he had heard various parties residing in the town of Atkinson talk about the reputation of defendant in error as to chastity. No objection was made, and no ruling had. The next question propounded was, "How many persons have you heard speak upon the question of her chastity residing in the town of Atkinson?" This was objected to as incompetent, and objection was sustained, and for the first time during the examination of the witness

an exception was noted. It is clear that the witness had not shown himself competent to testify upon the subject of the general reputation of defendant for chastity in the community in which she had, or then resided. That being true, as was evidently conceded by plaintiff in error by the course of the examination, it became incompetent to interrogate him as to how many persons he had heard speak upon the question of her chastity while residing in the town of Atkinson— First, by reason of the witness's previous declaration that he knew nothing at all upon that subject; and second, by the well known rule that when a witness is called for the purpose of impeachment, his testimony must be confined to the general reputation of the person sought to be impeached, leaving to the cross-examination the matter of testing his knowledge of such reputation.

Objection is made to the instructions given to the jury by the trial court. The instructions are somewhat lengthy, and written in consecutively numbered paragraphs, as required by section 55 of chapter 19 of the Compiled Statutes. No exception was taken to any of them, but at the close the following memorandum is made, to-wit, "The defendant excepts to each and every one of the above instructions separately." These exceptions are clearly insufficient to permit an examination of the instructions.

In *Dodge v. The People*, 4 Neb., 220, a similar question was presented to this court, and in the opinion, written by the present chief justice, the following language occurs: "The plaintiff excepted to the instructions given by the court on its own motion in these words: 'To this charge, and every part thereof, the defendant then and there excepted.' This is a general exception. The rule is well settled in this court that each specific portion of instructions which is claimed to be erroneous must be distinctly pointed out and specifically and pointedly excepted to. *McReady v. Rogers*, 1 Neb., 124. *Strader v. White*, 2 Id., 360. *Schryver v. Hawkes*, 22 Ohio State, 308."

In *Strader v. White,* it appears that the ground of error alleged was, "That the court erred in the charge and instructions given to the jury on the trial of said action." In the opinion written by Judge Lake, it appears that the exception to the instructions was as follows: "To the giving of such charge and instructions by the court, the defendants, F. E. and G. F. White, by their counsel, except." In writing the opinion, he says: "Now there are several propositions of law contained in this instruction to which no objection is urged, and which it is conceded state the law correctly. Where this is the case, it is well established in practice that a general exception to the whole charge will be unavailing, even though some of the propositions contained in it be untenable. Each specific portion which is claimed to be erroneous must be distinctly pointed out and specifically excepted to." See also, *Nyce v. Shaffer,* 20 Neb., 507. *Weir v. B. & M. Railroad,* 19 Id., 212. Maxwell's Pleading and Practice, 432, note.

As has been often said by this and other courts, common fairness to a trial court requires that his attention should be called to the objectionable instructions, if any, by an exception thereto, in order that such error may be corrected before the cause is finally submitted to the jury. It seems. to be conceded that a part of the instructions given correctly state the law. The general exception was therefore unavailing.

It is next insisted that the verdict is against the clear weight of the testimony. We have carefully examined all the testimony in the case, and cannot so hold. There was sufficient to sustain the finding of the jury that, prior and at the time of the speaking of the slanderous words, defendant in error with her husband was occupying a building known as the Commercial Hotel, in the village of Atkinson, owned by, and under a lease from, plaintiff in error; that at that time the reputation of defendant in error for chastity was not questioned in the community in which she

resided; that some difficulty arose between plaintiff and defendant, and that plaintiff conceived the idea of terminating the lease; that in order to do so he circulated the report against her chastity, the result of which would be to diminish the patronage of the house and render it unprofitable to the tenants; that actions were instituted for possession of the property, in which plaintiff was unsuccessful; that he sought to array the citizens of the village against defendant by the insinuation that such an establishment as the house occupied by her should not be tolerated by the community, and that defendant's character for chastity was, prior to that time, good.

It is true that the testimony upon the question of her chastity was somewhat conflicting; yet there was not only sufficient to warrant the jury in finding the charge was untrue, but that it was maliciously made. In a case of such a conflict as is here presented, the jury must be the sole judge of the weight of the testimony and of the credibility of the witnesses. The verdict cannot for that reason be molested.

Upon the hearing of the motion for a new trial a number of affidavits were submitted by which newly discovered evidence was sought to be shown. These affidavits were not copied by the clerk in making up the record, but the originals are included in the transcript, some of which are legibly written, others are not. These affidavits may be disposed of generally, by the remark that all the testimony which it is claimed was discovered was cumulative, bearing directly upon the propositions or questions submitted to the jury upon the testimony of the witnesses examined on the trial   The particular defense presented being the truth of the alleged slanderous words, the principal testimony introduced upon the trial by plaintiff in error was for the purpose of establishing that defense. Among the witnesses examined we will mention John G. Williamson, James Cross, W. R. Williams, and William F. Jamison.

The witness Williamson testified as follows:

"Q. State, if you know anything, of your own knowl-edge, in regard to her character for chastity, at the time she lived in Creighton? A. I do not."

After the verdict an affidavit was filed by him, in which he sets out his knowledge of facts concerning the general reputation of defendant in error for chastity during her residence in Creighton, and also during her residence in Atkinson, which is in language not proper to be here quoted. This alleged newly discovered testimony must have been known by him at the time he testified, and if true he must have testified falsely in order to avoid its narration, or his affidavit was an after-thought.

The witness Cross testified that he knew the general reputation of defendant in error for chastity at the time she lived in Creighton, and that it was bad, and therefore the whole weight of his testimony upon that question was before the jury, and which they seemed not to have believed. In his affidavit he states that one George Davis, of Mor-relville, Knox county, Nebraska, and one Schlater, who resided in Creighton, in the same county, had given him certain information as to what they had seen and heard concerning defendant in error. The affidavits of those two gentlemen were not presented, and therefore the affidavit of Cross, being hearsay, is not credited. Hilliard on New Trials, 514.

W. R. Williams was introduced as a witness for the defense. On his direct examination he was asked the fol-lowing question: "Are you acquainted with the general reputation of the plaintiff in this action, as to her chastity, in the community in which she lives?" To which he made answer, "No, I ain't acquainted." After the verdict was rendered, he made an affidavit, which was attached to the motion for a new trial, in which he stated that he resided in the town of Atkinson, and that in the year 1885,

and prior to the commencement of the suit, he was acquainted with the defendant in error, and that he heard a great number of men, other than defendant's husband, say, within a year prior to the filing of the affidavit, that they had had sexual intercourse with her. If this was true his testimony must have been corruptly false, for if he had been sufficiently acquainted with the reputation of defendant in error as to have heard "a great number of men" say they had sexual intercourse with her, this would have been sufficient to have justified him in answering that he was acquainted with her reputation for chastity; especially so when the number of inhabitants of the village of Atkinson at that time is taken into consideration. In addition to this, the witness, apparently not satisfied with the discrepancy existing between his affidavit and his testimony, voluntarily disgraced himself by saying, under oath, that he had had intercourse with the defendant, for which he paid the sum of $2. In addition to the fact that the facts stated in the affidavit would be simply cumulative and not ground for a new trial, a fair insight into the character of this witness is given by his apparent willingness to make public the fact of his own perjury and his own shame.

Upon this whole question of newly discovered evidence it must be sufficient to say generally, that a new trial will not be granted upon the ground of newly discovered evidence, when such evidence is merely cumulative, unless the new evidence is sufficient to render clear what was before doubtful. *Bolar v. Williams*, 14 Neb., 389. *Schreck-engast v. Ealy*, 16 Id., 510. *Halliday v. Briggs*, 15 Id., 219. *Scofield v. Brown*, 7 Id., 224. Applying this rule construed in its most liberal form for plaintiff in error, it is quite evident that should all the witnesses whose affidavits are presented appear in court and testify to the competent facts therein stated, and be contradicted as they are by the testimony of other witnesses, no different result

could be obtained growing out of such testimony. It carries upon its face the blemish of being either false, or given by persons destitute of all the nobler instincts of our common humanity, and, therefore, in no degree entitled to credit. There was no error, therefore, in the decision of the district court in overruling the motion for a new trial on the ground of newly discovered evidence.

After the testimony had been closed, and each party had rested, plaintiff in error asked the "privilege under the pleadings to have the opening and closing to the jury." Upon objection by defendant in error, the request was refused, to which plaintiff in error excepted, and of which he now complains. In this there was no error. The order of trial in this respect is fixed by section 283 of the civil code, the *sixth* clause of which is: "The parties may then submit or argue to the jury. In the arguments, the party required first to produce his evidence shall have the opening and conclusion." From the record it appears that defendant in error first produced her evidence. This was without objection from plaintiff in error, and he must be held to have consented to the order of trial. See also *Vifquain v. Finch*, 15 Neb., 505.

The next contention of plaintiff in error is, that the damages awarded by the verdict are excessive and were given under the influence of passion and prejudice. We can see nothing in the record which would indicate that the verdict was the result of either passion or prejudice, and it would not for that reason be molested. But we are of the opinion that, in the estimation of the damages, the jury failed to take into consideration some elements which they should have considered, and for that reason the verdict is greater than was warranted under all the circumstances of the case, as proven by the evidence on the trial. For this reason the judgment of the district court will be reversed and a new trial granted, unless the defendant in error file a remittitur of one thousand dollars within thirty days from

this date.   In case such remittitur is filed the judgment of the district court will be modified and affirmed for the sum of two thousand dollars.

JUDGMENT ACCORDINGLY.

THE other judges concur.