SADIE A. BAILEY, APPELLEE, V. JOHN H. KLING, APPELLANT.

FILED MARCH 16, 1911.   No. 16,345.

1. Appeal: STRIKING PORTION OF ANSWER: HARMLESS ERROR. The error, if any, of the district court in sustaining a motion to strike out portions of an answer will not require a reversal of a judgment, if, upon the trial, the subject involved in the stricken portions of the answer was gone into, and the issue submitted to the jury by appropriate instructions, and no prejudice resulted.

2. Trial: INSTRUCTIONS: CONSIDERED AS A WHOLE. In the examination and construction of instructions given to a trial jury, they must be considered as a whole, and a defective one will not require a reversal of a judgment where the defect is cured by another instruction given.

3. Appeal: HARMLESS ERRORS. Insignificant errors committed upon a trial, but none of which are so prejudicial as to require the reversal of a judgment, will not be considered on appeal.

4. ———: EXCESSIVE VERDICT: REMITTITUR. "Where it appears that a judgment is based on a verdict which is excessive, though not given under the influence of passion or prejudice, it may be permitted to stand, even in actions *ex delicto*, on condition that the excess be remitted." *Bee Publishing Co. v. World Publishing Co.*, 59 Neb. 713.

5. Damages *held* to be excessive, and plaintiff allowed to file a remittitur.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed on condition.*

*A. H. Byrum*, for appellant.

*W. C. Dorsey* and *Bernard McNeny*, contra.

REESE, C. J.

This action is for slander. The petition is in the usual form, and alleges the use of language by defendant to plaintiff, in the presence and hearing of others, by which defendant is accused of charging plaintiff, who is unmarried, with being a lewd woman. The style of language

alleged to have been used is in the most rough and ungentlemanly form, but which we do not deem it necessary to repeat here. .The charge is alleged to have connected plaintiff's lewdness with a "traveling" married man by the name of Glick.

Defendant filed an amended answer to plaintiff's petition, which consisted of: First, a general denial. Second, alleging that defendant was engaged in the merchandise business; that plaintiff was in his service as a saleswoman in his store; that they had a conversation in which defendant remonstrated with plaintiff as to her relations with the "traveling man," above named, plaintiff being warned against him and of being in his company alone and after night; that his warning was resented by plaintiff, but that he cautioned her that if she persisted in being in company of said person alone and in the night-time people would be justified in believing her to be a woman of immoral character; that defendant believed in the truth of what he had heard, and that all he meant and stated he meant was that her conduct and the reports about her would injure her standing in the community and her usefulness as a saleswoman in his employ and in their business relations; that what he said was without malice and for good and justifiable purposes. Third, on account of their relations as employer and employee, defendant felt an interest in the conduct and character of plaintiff in so far as her reputation was concerned, that an injury to her reputation would affect his business adversely should she remain in his employ, and that his admonition to her was a privileged communication. Fourth, that what he did say in said conversation was true.

Plaintiff moved to strike out the second and third paragraphs of the answer. No reason for striking out those paragraphs is assigned in the motion, and, so far as the record is concerned, we are left wholly to conjecture as to the reasons therefor. The motion was sustained and the paragraphs were stricken out, to which defendant excepted, and the ruling is now assigned for error. The

contention scarcely merits consideration here, as the order appears to have been practically ignored during the progress of the trial. All that could reasonably have been shown under the averments as they stood before the order was made was presented by the evidence. Defendant was permitted to testify to the relation between him and plaintiff as employer and employee, what he said to her, and his motive for so doing. The whole matter, as contended for by him, appears to have been given in evidence. By the instructions of the court the subject of the existence of mitigating circumstances was submitted to the jury. The error, if any, was cured, and no prejudice resulted.

Instruction numbered 4, given by the court, is quite severely criticised, and, if considered as standing alone, we should hesitate to approve it, for it practically instructed the jury that, if they found that defendant spoke the words as charged in the petition, unless he proved by a preponderance of the evidence all that was necessary to show, that plaintiff was what she was alleged to have been charged with being, she was entitled to recover; thus eliminating all consideration of mitigating circumstances from the instruction. However, in the next instruction the plaintiff's right to recover is made to depend on the absence of mitigating circumstances. The instructions, when considered together, are sufficient. There appears to be a number of more or less insignificant errors shown by the record, but none so prejudicial as to require the reversal of the judgment *in toto*.

It was contended that the verdict and judgment is excessive. We have examined the evidence as contained in the bill of exceptions with care, and reluctantly arrive at the conclusion that such is the fact. In all such cases this court has not hesitated to investigate this question in actions *ex delicto* as well as *ex contractu,* including cases of slander and of libel, and, when verdicts have been found to be excessive, have required remittiturs to be entered as a condition of affirmance, and, where it has been found

that there was no excess, the judgments have been affirmed. *Brooks v. Dutcher*, 22 Neb. 644; *Herzog v. Campbell*, 47 Neb. 370; *Bee Publishing Co. v. World Publishing Co.*, 59 Neb. 713; *Bee Publishing Co. v. Shields*, 68 Neb. 750; *Bloomfield v. Pinn*, 84 Neb. 472.

The evidence as to the use of the language attributed to defendant is conflicting; but in the examination of this question we must assume from the verdict that defendant made use of the charges made to and against the plaintiff as to her chastity substantially as alleged in the petition and testified to by her and two other witnesses. There can be no doubt that the language so attributed to defendant was coarse and profane, showing him to be destitute of the finer sensibilities which characterize a true gentleman. Aside from the charges against plaintiff, the accompanying profanity, which he shows by his testimony he is in the habit of using, does not commend him to the respect of a jury of right-minded people. Therefore his conduct does not appeal to any great extent in his behalf. The right of recovery in such cases is not founded upon the idea of smart money, vindictive or punitive damages as a punishment to the wrong-doer, for such damages are not allowed in this state. The only damages which are recoverable are such as are compensatory—that which will compensate a plaintiff for the injury inflicted. This rule must be applied to each case as it may be presented. In all cases the charge is presumed to be false. Where the language is actionable *per se*, the law presumes a damage to the reputation and standing of the person slandered. In such cases the effect upon the mind of the person slandered is an element of damages. A slander of the kind here charged, if uttered against a lady of known virtue, of modesty and of correct lines of thought and life, never indulging in word or act against which any just criticism could be made, or which could shock the sensibilities of the most cultured and refined people, and upon whom such charge would have an injurious effect, would entitle her to a much heavier recov-

ery than one who would, herself, indulge in lascivious
thoughts and conversations and improper acts and con-
duct regardless of the opinions or approval of correct-
thinking people. It appears from the evidence in this
case that plaintiff associated and consorted with a mar-
ried man, alone, late at night; that at the time of the con-
versation during which the objectionable language was
used plaintiff had expressed a purpose to go to St. Joseph,
Missouri, when defendant suggested in no polite language
that she was going with the man referred to, whom he
denounced as a g—d d—d whore-master, when she re-
sponded, "That is what he is," and this was immediately
followed by the alleged slanderous charge; that at a time
previous to this she had informed defendant that the man
referred to was keeping a prostitute at the city of Alma.
She therefore knew the character of the man with whom
it was alleged that she was consorting. Immediately
upon the making of the charge against her by defendant,
she went to a telephone to call the man whom both she
and defendant had accused of being a libertine; but, fail-
ing to find him, caused him to be "hunted up," when she
telephoned him of her trouble and desired him to come to
her, the call for him being in connection with the conver-
sation which had just before that time been held, and he
returned to her. This action was soon thereafter insti-
tuted. The slanderous charge was made on Monday
morning. The next Saturday morning plaintiff went to
the store of defendant, called him into another room,
where they were in privacy. We here copy the conversa-
tion which followed, as testified to by defendant and not
denied by plaintiff. Defendant testified that, when they
went into the room, "I pulled the curtain, and she asked
me, she says: 'Why didn't you come up yesterday evening,
as you agreed to come?' I said to her, 'Sadie, I didn't
care to come; I told you when I left you that if I came to
see you it would be in bright daylight, so people could
see me.' Then she said: 'What are you going to do about
this matter?' I said: 'What?' She said: 'What are you

going to do?' I said: 'What do you want?' She said: 'I want $1,000, I have got to give Glick $500 of that money.' " This testimony as to her having to give Glick half of the $1,000 is corroborated by the testimony of Harry Kling, a son of defendant, who was near by, but outside the door, who heard her make the statement. No part of this is denied by plaintiff. The man Glick was the only witness called in rebuttal. He testified that he was a traveling man and his home was in Atchison, Kansas; that he first became acquainted with plaintiff on the 28th day of December, 1907; that on the 2d day of August, 1908 (which was Sunday afternoon, the day previous to the speaking of the slanderous words), he called upon plaintiff "in regard to explaining to her where she could secure a position, in Almena, Kansas"; that he remained there "until the church bells began to ring for evening meeting," but was not alone with her at any time during his stay, which was at the home of Mrs. Sheck; that he had never called there before, and that Mrs. Sheck's daughters were present during his stay. Nothing further was asked of him as to his relations with plaintiff, or his demand or expectation of receiving any portion of the money plaintiff might recover. Plaintiff was not called upon to refute the testimony of defendant or his witnesses. The evidence that she had told defendant that Glick had a prostitute in the city of Alma, and that she was to give Glick $500 of the $1,000 she demanded upon compromise of her claim, must be taken as admitted. We do not overlook the fact that her mother is deceased; that her father resides at Stroud, Oklahoma; that she has been bereft of a mother's care and has had a struggle in life, laboring for her own education and support as testified to by her, although her age is not shown. The case is in some respects similar to that of *Brooks v. Dutcher, supra,* where a verdict of $3,000 was deemed excessive. We are persuaded that the same is true in this case, and that a judgment for $2,000 would be ample compensation for the damage sustained by plaintiff.

The judgment of the district court will be reversed and remanded for further proceedings, unless plaintiff file a remittitur in this court of $1,000 from the judgment. In case such remittitur is filed, the judgment of the district court for $2,000 will be affirmed, the costs in this court to be equally divided between the parties, each paying one-half thereof.

JUDGMENT ACCORDINGLY.

LETTON, J., not sitting.