LINCOLN DRUG COMPANY, APPELLEE, v. EARL N. HARMAN, DOING BUSINESS AS HARMAN TRANSFER LINE, APPELLANT, JAMES A. DONALDSON ET AL., APPELLEES.

19 N. W. 2d 566

FILED JULY 13, 1945. No. 31955.

*Perry, Van Pelt & Marti* and *Arthur E. Perry,* for appellant.

*Beghtol, Foe & Rankin* and *John C. Mason,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an action to recover $1,386.78 from Earl N. Harman, James A. Donaldson and Georgia Donaldson for the value of merchandise alleged to have been lost in the process

of delivering it from the Eastman Kodak Company's warehouse in Chicago, Illinois, to the Lincoln Drug Company in Lincoln, Nebraska. The trial court found that negligence was not established, dismissed the action as to the Donaldsons and entered judgment against Harman for the amount claimed on the theory that he was a common carrier. From this judgment defendant Harman appeals.

The record shows that on August 1, 1937, the Lincoln Drug Company entered into a written contract with Harman whereby it was agreed that the company would employ Harman to haul merchandise for it as directed and at the rates therein specified. On July 15, 1942, the Lincoln Drug Company ordered certain merchandise from the salesman of the Eastman Kodak Company upon which signed order the Lincoln Drug Company specified that it should be shipped via Chicago Transfer Company in care of Harman Transfer Line. On July 20, 1942, the merchandise was delivered to the Chicago Transfer Company and by them deposited at a loading dock in Chicago, where Harman had arranged for space. During the night the dock was broken into and the property in question taken therefrom by persons who have never been apprehended.

At the time the merchandise was delivered to the Chicago Transfer Company by the Eastman Kodak Company, a uniform straight bill of lading was made out to "Chgo Trans. C/O Harman Trans" which was signed "Harman Transfer" by "Lankin," Lankin being a truck driver for the Chicago Transfer Company. The bill of lading provided in part: "The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided." It is admitted that the Chicago Transfer Company is a common carrier and that the Harman Transfer Line was a contract carrier. Neither is it disputed that the liability of a contract carrier is for negligence only and that the liability of such a carrier could be increased by contract provision. Nor is it anywhere questioned that the liability of a common carrier is in effect that of an insurer

against loss from whatever cause except an act of God, the public enemy or of the owner of the goods.

There is much evidence in the record concerning the sale of the Harman Transfer Line, including its equipment and contracts for hauling, to the Donaldsons. Whether the Donaldsons were the sole owners of the Harman Transfer Line or merely the agents of Harman is not material under our view of the case on this appeal and for that reason we will not discuss the evidence going to that point.

We are of the opinion that Harman's liability must be determined by the contract he made with the Lincoln Drug Company. It will be noted that under that contract he agreed to haul for the Lincoln Drug Company as directed. The Lincoln Drug Company, in ordering the merchandise in question, specified that it should be delivered to the Chicago Transfer Company. This was done. The Chicago Transfer Company placed it in the loading dock where Harman was to pick it up and transport it to Lincoln. This is not a case where a common carrier received merchandise and undertook for itself to perform an entire service of transportation from point of origin to destination. The Lincoln Drug Company, under its contract with Harman and the shipping instructions given the Eastman Kodak Company, contemplated no such relationship. The transportation charges were paid on the rates provided in its contract with Harman. The hauling was done as directed by the Lincoln Drug Company. It was clearly the intent of the parties that the liabilities of each were determinable by the contract between Harman and the Lincoln Drug Company. This liability being that of a contract hauler and there being no evidence adduced of any negligence on Harman's part, a verdict should have been directed for Harman by the trial court. 13 C. J. S., sec. 74, p. 138; *Langendorf Clothing Co. v. Fara,* 272 Ill. App. 160; *Beatrice Creamery Co. v. Fisher,* 291 Ill. App. 495, 10 N. E. 2d 220.

The plaintiff contends that the bill of lading signed when the merchandise was delivered to the Chicago Transfer Company is binding upon Harman. Assuming that the sig-

nature of Lankin, the truck driver, was sufficient to bind Harman, it can avail the plaintiff nothing for it fixed Harman's liability as at common law and, he being a contract hauler, the common law imposes no liability upon him. His liability was for negligence only.

The plaintiff urges that Harman assumed a greater duty than his contract with it placed upon him. We find no evidence to support this contention. The plaintiff instructed the Eastman Kodak Company to ship the merchandise via Chicago Transfer Company, care of Harman Transfer Line. These instructions were followed and were consistent with the hauling contract made by the Lincoln Drug Company with Harman. There is no evidence in the record that Harman, or any one authorized to act for him, made any other or different contract than the one hereinbefore described. Nowhere in the record does it appear that Harman assumed by express contract to deliver the goods at their point of destination in good or safe condition and thus became an insurer. It is clearly the rule that the business of a contract carrier of goods is obtained by, and is dependent upon, his contract with the shipper. But unless he expressly contracts to the contrary, his liability is to be determined by the law applicable to a contract carrier.

The cases cited by plaintiff are clearly distinguishable. In *Klein v. Baker,* 112 Cal. App. 157, 296 Pac. 631, the private carrier agreed to deliver the goods to destination at a certain time without any reservation for contingencies. The goods were destroyed by fire in transit. The private carrier was held to his contract to deliver the goods to destination. In *Max Biederman, Inc. v. Henderson,* 115 W. Va. 374, 176 S. E. 433, the private carrier contracted unconditionally to deliver the goods safely. He did not do so and he was held to his contract. The defendant Harman made no such contract in the present case.

Plaintiff relies on *Galveston Wharf Co. v. Galveston, H. & S. A. Ry. Co.,* 285 U. S. 127, 52 S. Ct. 342, and *Sun Ins. Office Limited v. Be-Mac Transport Co.,* 8th Cir., 132 Fed. 2d 535. These cases are clearly distinguishable. In each

case the initial carrier was a common carrier who undertook to perform the entire transportation service from point of origin to destination. Under such circumstances all connecting carriers are liable as common carriers, even though they may be private or contract carriers otherwise. We do not question the correctness of these holdings, but they do not apply to the situation here presented.

In the present case the hauling contract was made between the consignee of the goods and a contract hauler. The consignor delivered the goods to the agent of the contract hauler as directed by the consignee. The agent of the contract hauler, a common carrier, delivered the goods to the contract hauler as directed. The loss occurred while the goods were in the legal possession of the contract hauler, without negligence on his part. Under the circumstances here shown the bill of lading must be considered in connection with the special contract entered into by the parties. In so doing we find no intention anywhere expressed to increase the liability of the contract hauler to that of a common carrier. Negligence on the part of the contract hauler not being shown, liability on his part does not exist.

REVERSED AND DISMISSED.