# Richmond

## Railway Express Agency, Inc. v. Jake M. Kessler and Marguerite Kessler.

March 7, 1949.

Record No. 3464.

Present, All the Justices.

302

The opinion states the case.

*W. B. Snidow*, for the plaintiff in error.

*James L. Warren*, for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The question presented by this appeal is whether there was a proper delivery of goods by the defendant, Railway Express Agency, Inc.

On September 15, 1947, Jake M. Kessler, father of Marguerite Kessler, delivered to the defendant at Narrows, Virginia, two trunks and two cartons addressed to Mar-

guerite Kessler, 828 Park avenue, Richmond, Virginia. The shipment was valued at $500, for which an extra charge of forty cents was paid.

Miss Kessler, who lived with her parents at Narrows, had previously enrolled as a student at Richmond Professional Institute in Richmond and had been informed by the school that she would room in an apartment at 828 Park avenue. She left home on the morning of September 17 and arrived in Richmond that afternoon. She reported immediately to Mrs. Gordon, in charge of the administration office of the school, who told her that 828 Park avenue was being repaired and was not ready for her; that she would have to stay out in town that night, which she did. She arrived at her room next day, September 18. Her trunks and cartons were not there. She called the defendant and was told an investigation would be made. Next day, September 19, she found the two trunks in her room but did not know how they got there. The two cartons were never received.

In the meantime, the two trunks and two cartons went forward from Narrows on the morning of September 16, next day after defendant received them. They arrived in Richmond that afternoon, being the day before Miss Kessler arrived. Defendant's agent, Gilman, was directed to deliver them. Earlier that day, Gilman had taken other articles to be delivered to 828 Park avenue, had found repair work going on there and had been told by Mrs. Gordon, in charge of the administration office in the school's administration building, just across the street, that everything for that address should be delivered to the girls' gymnasium, around the corner on Shaffer street. When Gilman arrived with the trunks and cartons, along with other packages for the same address, he told Mrs. Gordon he had them and she directed him to put them in the girls' gymnasium. She told her son, who was helping her in the administration office, to go with Gilman and store the trunks and cartons in the gymnasium and sign the receipt, which was done. That was the last Gilman saw of the trunks or cartons.

Miss Kessler and her father filed suit against the defendant and obtained a verdict and judgment for the value of the articles in the two cartons. The defendant contends that the method of delivery was sufficient to terminate its liability as carrier, and that thereafter, if liable at all, it was liable only as warehouseman for negligence.

■ In the transportation of goods an express company is, of course, a common carrier and is an insurer of the goods it transports, subject to a few recognized exceptions for happenings beyond its control, as *vis major* and the like. Its duty goes a step beyond that applicable to railroad companies and water carriers and requires it to make delivery in person to the consignee or his authorized agent at the address given. Express companies are said, in fact, to owe their origin to the need or value of this extra service. They claim *to* render superior service and for it they usually make a higher charge. It is proper that they should be held to a strict performance of their duties safely to transport and deliver. *Hutchinson* v. *United States Exp. Co.*, 63 W. Va. 128, 59 S. E. 949, 14 L. R. A. (N. S.) 393 and note; Hutchinson on Carriers, 3d ed., vol. 2, p. 801, *et seq;* 9 Am. Jur., Carriers, sec. 546, p. 754; 13 C. J. S., Carriers, sec. 171, p. 329.

■ The duty of an express company as a common carrier is not terminated, ordinarily, until it has made delivery of the goods, within and at a reasonable time, to the right person, at the proper place, and in a proper manner. Elliott on Railroads, 3d ed., vol. 4, p. 753; 9 Am. Jur., Carriers, sec. 546, p. 754.

It is liable for an unauthorized delivery regardless of the question of negligence or the exercise of due care. *Norfolk, etc., R. Co.* v. *Aylor*, 153 Va. 575, 582, 150 S. E. 252, 254.

But the liability of an express company as insurer does not necessarily continue in all cases until personal delivery is in fact made. If it makes proper effort to deliver and delivery is prevented by the absence or rejection of the consignee, its liability then becomes that of a warehouseman, answerable for negligence, and not as insurer.

"* * * If a diligent and honest effort to find the consignee or any person authorized to receive the goods has proved unavailing, failure to make actual delivery is excused, and the company may then deposit the goods in a reasonably safe warehouse. From the time of such deposit, its liability as carrier ceases, and it holds the property in the capacity of warehouseman. * * *" *Hutchinson* v. *United States Exp. Co., supra,* 59 S. E. at p. 951.

"If the consignee is absent from the place of destination, or cannot, after reasonable inquiries, be found, and no one appears to represent him, the carrier may place the goods in a warehouse or store, with a responsible person, to be kept on account of and at the expense of the owner. He cannot release himself from responsibility by abandoning the goods or turning them over to one not entitled to receive them. * * *" *North Pennsylvania R. Co.* v. *Commercial Nat. Bank,* 123 U. S. 727, 8 S. Ct. 266, 31 L. Ed. 287, 290.

The consignee cannot absent himself, put it out of the power of the carrier to make a delivery to him, and then hold the carrier as insurer during his absence. If he is absent when the carrier is ready to deliver, and has left no agent known to the carrier to whom delivery can be made or notice given for him, the carrier then becomes a warehouseman of the goods. Hutchinson on Carriers, *supra,* at pp. 807-8; *Marshall* v. *American Exp. Co.,* 7 Wis. 1, 73 Am. Dec. 381; *Clendaniel* v. *Tuckerman,* 17 Barb. (N. Y.) 184; *Roth* v. *Buffalo, etc., R. Co.,* 34 N. Y. 548, 90 Am. Dec. 736; *Bullard* v. *American Exp. Co.,* 107 Mich. 695, 65 N. W. 551, 61 Am. St. Rep. 358, note at p. 360, 377, 33 L. R. A. 66; *Dohrmann Hotel Supply Co.* v. *Owl Transfer, etc., Co.,* 19 Wash. (2d) 522, 143 P. (2d) 441, 149 A. L. R. 1108, anno. at p. 1122.

In *Adams Exp. Co.* v. *Darnell,* 31 Ind. 20, 99 Am. Dec. 582, the plaintiff sued the company for the loss of government bonds. The company answered that when the package was delivered to it at Indianapolis, the plaintiff knew it would arrive at the village of Waldron, its destination,

where plaintiff lived, at noon on May 11; that it did arrive at that hour and was ready for delivery to the plaintiff, but the plaintiff was absent from his home all that day and had no agent there; that the defendant thereupon deposited the package in the iron safe of a respected and responsible merchant of the village (the company having no safe of its own there), and caused the safe to be securely locked. That night burglars robbed the safe and stole the bonds. The court held that the answer stated a good defense, as relieving defendant of liability as insurer and showing performance of its duty as bailee; that the answer alleged that personal delivery was rendered impossible by the plaintiff in consequence of his absence, with knowledge of its arrival; that it was the right and duty of the carrier to terminate its liability as insurer within a reasonable time by delivery; that if the interest, convenience or pleasure of the consignee required his absence, its consequences should fall on him; but the defendant would not thereby be discharged from all responsibility and would thereafter be liable as bailee "for such reasonable care of the property as prudence would require." 31 Ind. at p. 23.

*Southern Exp. Co.* v. *Everett*, 37 Ga. 688, was an action for the loss of a diamond pin from a package delivered to the express company addressed to a girl student at a college. The package was delivered to the president of the college unopened, and he caused it to be handed to the student in the same condition as when he received it. She opened it and found the pin missing. It was held that whether this was a good delivery was a question for the jury upon consideration of whether there was a rule or custom of the college affecting the matter so that the president might be considered the authorized agent of the students.

The instructions given by the court below improperly left out of view the questions whether under the circumstances there was a sufficient delivery of the cartons to terminate the defendant's liability as insurer and as warehouseman; or if only as insurer, then whether the defendant exercised the reasonable care required of it in storing the cartons in the gymnasium.

Instruction No. 1 given for the plaintiffs told the jury that if the defendant delivered the property to a person other than Marguerite Kessler, without authority from the plaintiffs to do so, "and as a result of such wrongful delivery," the property was lost, they should find for the plaintiffs. There should have been in this, or some other instruction, the explanation that such authority might be implied from circumstances. The instruction asked by the defendant, however, was properly refused. It stated that if the defendant made the best possible delivery under the circumstances, and used reasonable care, the jury should find for the defendant. The question was not whether the defendant made the best delivery possible, but whether the delivery it made was to a person authorized expressly or impliedly to receive it. This was an absolute duty, unaffected by the question of reasonable care. The question of reasonable care could only arise with respect to the disposition of the property in event the delivery was found not to be authorized, but sufficient to terminate the liability of the defendant as insurer.

The second instruction given for the plaintiffs was also erroneous. It told the jury that if the plaintiffs delivered to the defendant the property addressed as stated, and "paid an additional charge for insurance on the property, by which the defendant was insured that the property would be safely delivered," then if the property was not delivered to Miss Kessler, they should find for the plaintiffs. Besides leaving out the question of implied authority, the instruction represents a misconception of the effect of the additional charge. That was paid to increase to $500 the amount for which the defendant could be held liable in event it failed to perform its duties. Otherwise, under the uniform express receipt, the amount of its liability would not exceed $50. The payment of the additional charge did not affect the defendant's duties, and did not provide insurance for the defendant.

The judgment complained of is reversed and the case is remanded for a new trial in keeping with the views herein expressed.

*Reversed and remanded.*