FISHER CORPORATION, APPELLANT, V. CONSOLIDATED FREIGHTWAYS, INC., APPELLEE.

434 N.W.2d 17

Filed January 13, 1989.    No. 87-289.

Elizabeth Stuht Borchers, of Marks & Clare, for appellant.

Thomas D. Wulff, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

BOSLAUGH, WHITE, CAPORALE, and SHANAHAN, JJ., and JAMES MURPHY, D.J.

CAPORALE, J.

Plaintiff-appellant, Fisher Corporation, a manufacturer of electronic equipment, seeks to recover the value of certain video cassette recorders stolen while in the possession of defendant-appellee, Consolidated Freightways, Inc., a

transporter of goods. The district court, in accordance with verdicts, dismissed Fisher's action. Fisher appeals, asserting, in summary, that the district court erred in (1) striking one of its two alternative theories of recovery, (2) instructing the jury, (3) ruling the evidence sufficient to support the verdicts, and (4) refusing to grant a new trial for newly discovered evidence. We affirm.

In its original petition, Fisher pled that it was entitled to recover on the theory that at the time of the theft, Consolidated was serving as a warehouser, or alternatively, on the theory that at the relevant time, Consolidated was serving as a common carrier. A warehouser, that is, one "engaged in the business of storing goods for hire," Neb. U.C.C. § 7-102(1)(h) (Reissue 1980), is, in the absence of a contrary agreement, liable for goods lost while in its possession only if, as detailed later in this opinion, the loss occurred through its negligence. See Neb. U.C.C. § 7-204 (Reissue 1980). A common carrier, on the other hand, is an insurer against loss from whatever cause, except an act of nature, of the public enemy, or of the owner of the goods. *Lincoln Drug Co. v. Harman*, 146 Neb. 354, 19 N.W.2d 566 (1945). Consolidated demurred generally to the entire petition. For some reason not apparent to us, the district court treated the demurrer as a motion to strike and ordered Fisher's common carrier theory of recovery stricken. Fisher then amended its petition so as to allege only its warehouser theory. Consolidated thereafter answered by admitting the loss but denying any negligence, attributing the loss to theft.

The record reveals that in June of 1984, Fisher, under a "standard bill of lading," delivered to Consolidated, at Fisher's warehouse in California, 132 recorders for shipment to World Radio, Inc., an electronics retailer, at Council Bluffs, Iowa. Consolidated divided the shipment into two parts, tendering delivery to World Radio of 60 recorders on June 29 and 72 recorders on July 6. World Radio rejected each tender as duplicative of earlier shipments.

In order to understand what follows, it is necessary to interrupt our recitation of the relevant events and review the legal significance of World Radio's rejection of the recorders. So far as we can determine from the record, the bill of lading

under which the recorders came into Consolidated's possession stated nothing about Consolidated's liability for loss should it find itself unable to deliver the recorders to World Radio as Fisher had directed. Under such a circumstance, once a common carrier tenders delivery of the consigned goods to a consignee which refuses delivery, the carrier loses its status as a common carrier and becomes a warehouser. *Rio Grande Motor Way v. Resort Graphics*, 740 P.2d 517 (Colo. 1987); *Barlow Upholstery & Furniture Co. v. Emmel*, 533 P.2d 900 (Utah 1975); *Chicago & North Western Ry. Co. v. Union Packing Co.*, 373 F. Supp. 734 (D. Neb. 1974), *aff'd* 514 F.2d 30 (8th Cir. 1975); *General American Tr. Corp. v. Indiana Harbor Belt R. Co.*, 191 F.2d 865 (7th Cir. 1951), *cert. denied* 343 U.S. 905, 72 S. Ct. 636, 96 L. Ed. 1324 (1952); *Railway Exp. Agency v. Kessler*, 189 Va. 301, 52 S.E.2d 102 (1949). Where a common carrier turned warehouser, acting as a bailee, accepts instructions from the bailor to ship goods to a specified location, its status as a warehouser again changes to that of common carrier. *Rohr v. Logan*, 206 Pa. Super. 232, 213 A.2d 166 (1965), citing *Lehigh Valley R. Co. v. John Lysaght, Limited*, 271 F. 906 (2d Cir. 1921).

Returning to the relevant events, the record discloses that after each rejected tender, Consolidated returned the recorders to its terminal at Sarpy County, Nebraska, for storage, pending receipt of Fisher's further instructions. On the day after the second rejection, Consolidated loaded all 132 recorders onto a trailer, sealed but did not padlock the trailer doors, and placed the trailer at the south end of its terminal yard. Padlocks were not used on any trailer doors so as not to call attention to a trailer containing expensive cargo; rather, all trailers were sealed. The doors of the trailer faced away from the terminal, toward the south end of a Cyclone fence which encircled the yard.

In accordance with its usual practice, Consolidated sent Fisher a form letter notifying it of World Radio's rejection of the shipments and indicating that after 3 days, Fisher would be charged for storage unless Consolidated received disposition instructions.

At 7 a.m. on July 17, a Tuesday, Consolidated's employees

discovered that 54 of the recorders were missing from the trailer. They also discovered that a large, 3-foot by 5-foot hole had been cut in the chain-link fence at the terminal's south end, and a smaller hole had been cut in the east fence. The recorders were never recovered.

The exact time the theft occurred is unknown, and witnesses' opinions vary as to when the theft took place. Maurice O'Toole, Consolidated's dock supervisor, testified that he checked the yard between 11:30 p.m. and midnight on Sunday, July 15, by walking behind all the trailers, and at that time he did not see any holes in the fence nor seals broken on the trailer containing the recorders. O'Toole claimed there was "no way [he] would have missed that hole."

O'Toole again checked the yard Monday night at 11:30 p.m. from his car but, because it was raining, did not check the back of the trailers or the fence. O'Toole's opinion was that the theft occurred late that Monday night or early the next Tuesday morning. O'Toole did not see any possibility the theft occurred over the weekend of July 14 and 15 because the trailer's seal and the fence were intact upon his inspection Sunday night.

On the other hand, Kenneth Benck, an investigator for the Sarpy County Sheriff's Department, was permitted to testify he had a "hunch" the theft occurred over the weekend preceding its discovery. Benck also testified that the security measures employed by Consolidated were equal to those employed by "other companies in the area" and were "reasonable."

The record reveals that at some point, Fisher notified Consolidated to return the rejected recorders to Fisher in California, but the record is not clear as to when that occurred. According to Fisher's evidence, it received notice from Consolidated of World Radio's rejection on Thursday, July 12, and presumably, on Friday, July 13, assigned and communicated to Consolidated a return authorization number.

Charlotte Moreland, a former traffic clerk at Consolidated, was called as a witness by Fisher and testified that she received verbal authorization for return of the recorders from Susi Murray, a Fisher employee, but was unable to remember the exact date Murray telephoned her. Murray herself was not a witness. Moreland recorded Fisher's return authorization

number on a document internal to Consolidated's operations. She then prepared a freight bill which reflected Fisher's return authorization number charging Fisher for returning the recorders. The copy of the internal document in the record contains no legible date; however, the freight bill is dated Monday, July 16. Moreland testified at one time that she prepared the internal document and the freight bill the same day she received the verbal authorization from Fisher, and at another time that a day or two could have intervened between the two events.

Fisher sent written instructions to return the rejected shipments by a letter dated July 12, but it is stamped as received by Consolidated on July 24.

The district court apparently concluded that, as Fisher claims in its first summarized assignment of error, it had erred in striking Fisher's common carrier theory, for during the course of the trial, the district court offered to declare a mistrial if the parties would agree or, in the alternative, again with the agreement of the parties, to submit to the jury, along with general verdict forms on the warehouser theory, a special verdict form asking the jury to determine whether the lost recorders were stolen before or after Consolidated received Fisher's oral return instruction. The trial judge said that if the jury were to determine that the theft occurred after Consolidated received such instruction, he would grant Fisher leave to amend the petition so as to conform with the proof and would enter judgment in its favor. Fisher replied it "would respectfully ask the Court not to declare a mistrial. The special verdict would definitely be the option that [it] would prefer." The district court did not declare a mistrial, and evidence was adduced concerning when the theft occurred and when Fisher instructed Consolidated to return the recorders.

Although the record does not contain the special verdict form itself, an entry made by the trial judge reflects that the jury found Consolidated " 'had received oral instructions from [Fisher] to ship the [recorders] after the theft or burglary occurred.' "

Thus, the situation presented is not unlike that in *Bailey v. Kling*, 88 Neb. 699, 130 N.W. 439 (1911). The trial court therein

struck portions of defendant's answer before trial, but nonetheless permitted defendant to adduce evidence relating to those portions. Regarding defendant's assignment of error to the *Bailey* trial court's order striking portions of defendant's answer, this court said,

> The contention scarcely merits consideration here, as the order appears to have been practically ignored during the progress of the trial. All that could reasonably have been shown under the averments as they stood before the order was made was presented by the evidence. . . . By the instructions of the court the subject of the [stricken portions were] submitted to the jury. The error, if any, was cured, and no prejudice resulted.

*Id.* at 700-01, 130 N.W. at 440.

It is a fundamental axiom of trial practice that one cannot be heard to complain of an alleged error corrected in a manner to which the complaining party agreed. *LeMieux v. Sanderson*, 180 Neb. 311, 142 N.W.2d 557 (1966). See, also, *Shadow Isle, Inc. v. Granada Feeding Co.*, 226 Neb. 325, 411 N.W.2d 331 (1987); *Langenheim v. City of Seward*, 200 Neb. 740, 265 N.W.2d 446 (1978). In other words, one may not waive an error, gamble on a favorable verdict, and, upon receiving an unfavorable result, reassert the error. *Pitt v. Checker Cab Co.*, 217 Neb. 600, 350 N.W.2d 507 (1984); *LeMieux v. Sanderson, supra.*

Thus, under the circumstances, there is no merit to Fisher's complaint concerning the trial court's treatment of the common carrier theory of liability.

The next summarized assignment of error complains that the district court refused to instruct the jury as Fisher requested, specifically, in the words of § 7-204(1), that a warehouser

> is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

Instead, the trial judge apprised the jury in one instruction that the "issue in this case is whether [Consolidated] exercised

due care to prevent the loss of [Fisher's] property." Another instruction taught the jury:

> "Reasonable care" may be defined as that amount or degree of care which ordinary prudence and proper regard for one's property and the property of others would require under the circumstances. Because of [sic] the amount of care exercised by a reasonable prudent person varies under each set of circumstances, it follows that the amount of care required will vary with the nature of what is being done, and all of the surrounding circumstances shown by the evidence in this case.

The jury was also advised, " 'Like circumstances' is simply the conditions shown to exist by the evidence in this case." In still another instruction, the jury was informed that "[a] bailee is not an insurer of the property in its possession and is only liable for loss of the property due to its failure to exercise reasonable care under the circumstances."

While it would have been better had the district court used either the phrase "due care" or the phrase "reasonable care" throughout the instructions, no serious claim can be made that the jury was misled or confused by the use of the two phrases. What Fisher does claim is that the standard contained in § 7-204 is higher than the one contained in the instructions given the jury. We conclude otherwise.

It must be remembered that jury instructions must be read together, and if taken as a whole they correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error upon which a reversal on appeal may be based. *Kearney State Bank & Trust v. Scheer-Williams*, 229 Neb. 705, 428 N.W.2d 888 (1988); *Carnes v. Weesner*, 229 Neb. 641, 428 N.W.2d 493 (1988). Furthermore, it is not error to refuse to give a requested instruction if the substance of the request is in the instructions actually given. *Carnes, supra.* " 'Where the meaning of an instruction is clear and a correct statement of the law, error cannot be predicated on the selection of words.' " *Hiner v. Nelson*, 174 Neb. 725, 731, 119 N.W.2d 288, 292 (1963), citing *Oliver v. Nelson*, 128 Neb. 160, 258 N.W. 69 (1934).

Although not worded identically to § 7-204, the gist of the

district court's instructions on the issue, when read together, is that a warehouser is liable for the failure to exercise the care "a reasonably careful" person "would exercise under like circumstances." That is, as provided by § 7-204, a warehouser is liable for the negligent loss of goods placed in its possession.

Accordingly, there is no merit to Fisher's complaint concerning the jury instructions.

The next, or third, summarized assignment of error asserts the evidence fails to support the verdict in favor of Consolidated, and, thus, the district court should have sustained the motion for directed verdict Fisher made at the close of all the evidence.

Our review is controlled by the rule that a directed verdict is proper only where an issue should be decided as a matter of law; that is, where reasonable minds cannot differ and can draw but one conclusion from the evidence. *Kearney State Bank & Trust v. Scheer-Williams, supra*; *Prime Inc. v. Younglove Constr. Co.*, 227 Neb. 423, 418 N.W.2d 539 (1988). Moreover, in determining the sufficiency of the evidence to sustain a verdict in a civil case, this court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, which is entitled to every reasonable inference deducible from the evidence. *Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 428 N.W.2d 152 (1988). A civil jury verdict will not be disturbed on appeal unless clearly wrong. *Kearney State Bank & Trust, supra*. Further, a verdict is not to be set aside where the evidence is in conflict or where reasonable minds may reach different conclusions or inferences, as it is within the jury's province to decide issues of fact. *Woitalewicz v. Wyatt*, 229 Neb. 626, 428 N.W.2d 216 (1988).

All that was clear at the close of all the evidence was that at some point 54 of the recorders in Consolidated's possession were stolen and that at some point Fisher telephoned Consolidated with authorization to return all 132 recorders. However, the evidence is such that reasonable minds could reach different conclusions as to when the theft occurred and as to when Consolidated received Fisher's return instruction. Reasonable minds could conclude from the evidence that the theft occurred anytime after O'Toole's yard check on the night

of Sunday, July 15, and before the theft was reported the following Tuesday, July 17. In the same manner, reasonable minds could 'conclude Consolidated received Fisher's oral instruction to return the recorders to it anytime between July 13 and 16.

Consequently, the evidence is sufficient to sustain the jury's special finding that Consolidated did not receive Fisher's return authorization until after the theft had taken place, thereby making Consolidated a warehouser at the time of the loss rather than a common carrier. Moreover, the evidence concerning the manner in which Consolidated stored the recorders does not compel but does support the finding implicit in the general verdict that Consolidated had not been negligent.

Therefore, the district court did not err in refusing to direct a verdict in favor of Fisher.

Finally, in the fourth summarized assignment of error, Fisher complains that the district court erred in denying its motion for new trial based on newly discovered evidence. Fisher argues that Moreland had information material to Fisher which could not with reasonable diligence have been discovered and produced at trial, as her whereabouts were unknown until trial commenced, and, thus, Moreland's knowledge was "newly discovered," as contemplated by Neb. Rev. Stat. § 25-1142 (Reissue 1985).

Even assuming, but certainly not deciding, that Fisher's concept of what constitutes newly discovered evidence is correct, Moreland's testimony was produced at trial by Fisher itself. Fisher does not claim, nor provide affidavits as required by Neb. Rev. Stat. § 25-1144 (Reissue 1985) to show, that Moreland had further testimony beyond what was presented at trial or that any other previously undiscovered witness could provide material testimony. Nor did Fisher at trial claim Moreland's testimony was a surprise, entitling it to a continuance.

As noted in *Schmidt v. Schmidt,* 228 Neb. 758, 424 N.W.2d 339 (1988), a motion for new trial is addressed to the discretion of the trial court. Further, as noted in *Gruenewald v. Waara,* 229 Neb. 619, 428 N.W.2d 210 (1988), such a motion is entertained with reluctance and granted with caution, because

of the manifest injustice in allowing a party to allege that which may be the consequence of its own neglect in order to defeat an adverse verdict, and, further, to prevent fraud and imposition which defeated parties may be tempted to practice to escape the consequences of an adverse verdict. As observed in *Kocarnik v. Kocarnik*, 209 Neb. 454, 308 N.W.2d 352 (1981), in order to make a sufficient showing for new trial upon the ground of newly discovered evidence, the proof in support thereof must show that such evidence was then available which neither the litigant nor counsel could have discovered by the exercise of reasonable diligence and that it was not merely cumulative, but competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would probably bring about a different result if a new trial were granted.

The district court did not err in failing to grant a new trial.

Since the record fails to sustain any of Fisher's summarized assignments of error, the judgment of the district court is affirmed.

AFFIRMED.