DAVID W. IPOCK, DOING BUSINESS AS MILLARD UPHOLSTERY, APPELLEE, V. UNION INSURANCE COMPANY, APPELLANT.
495 N.W.2d 905

Filed February 19, 1993.    No. S-90-250.

Joseph S. Daly and Clark J. Vanskiver, of Sodoro, Daly & Sodoro, for appellant.

Benjamin M. Belmont and Donald A. Roberts, of Lustgarten & Roberts, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The defendant, Union Insurance Company, appeals a jury verdict and judgment entered against it in a lawsuit brought by plaintiff, David W. Ipock, doing business as Millard Upholstery, to recover under an insurance policy issued by the defendant to the plaintiff on the plaintiff's motor home, which was destroyed by theft and fire.

The defendant assigns as error the action of the trial court in excluding evidence of plaintiff's recent drug activity and in failing to grant defendant's motion for a new trial based on newly discovered evidence. We reverse, and remand for a new trial.

According to the plaintiff's testimony, he purchased a 1985 Southwind 27-foot self-contained motor home for $12,000 in January 1987. He said that he had received the money for the purchase from his father and that his father had held onto the title, but never titled it in his own name. The vehicle was used for one or more trips between January and October 1987, but no one had title to it during this time period. The plaintiff borrowed license plates from his brother's motor home to put on it so that he would not be stopped and ticketed while he was using the motor home. The plaintiff never legally licensed the vehicle. The vehicle was titled in the name of the plaintiff's

business on October 14, 1987, and insurance coverage was purchased from the defendant 2 days later.

The plaintiff testified that the motor home disappeared from the plaintiff's place of business sometime between December 4 and 7, 1987. Approximately 2 weeks later, the plaintiff was notified that the motor home had been found near Glenwood, Iowa. It had been burned from the floor up and was totally destroyed by the fire. The plaintiff also testified that before its disappearance, the motor home had a value of around $35,000, while after the fire it was unrestorable and had no value.

Officer Kevin Parker of the Omaha Police Division testified that he was assigned to investigate the theft of the plaintiff's motor home. In investigating the plaintiff's past record, he discovered that the plaintiff had reported two vehicles stolen prior to the theft of the motor home, one of which was recovered burned in Sarpy County.

Mack Taylor, chief deputy sheriff for Mills County, Iowa, testified that the motor home was discovered on fire south of Glenwood on December 7, 1987. He investigated at the scene for evidence which would indicate how and why the motor home was at that location. He found that the license plates on the motor home were Michigan plates but that they could be traced to a U-Haul dealer in Omaha. Deputy Taylor testified that he believed the fire started in the center of the motor home, but there was no major wiring or engine in that area of the vehicle. Based on the facts that the motor home had been burned in a secluded area of Mills County, that many vehicle arsons are on unmarked county roads, and that no one was around to notify the police that the vehicle had burned, the deputy stated he thought the fire was of suspicious origin and there was a good possibility it had been set.

Mills County Sheriff Howard Clark similarly testified that he felt the fire had been started by something other than the operation of the motor home itself. He also stated that he spoke with the plaintiff on the phone approximately 2 weeks after the fire and that when he advised the plaintiff that the motor home had been found, the plaintiff asked if there was a fire.

Eileen Cherek testified that she had been employed by the plaintiff as the office manager of his business, Millard

Upholstery. She stated that she was aware that work was being done on the motor home, but that she did not handle the records pertaining to that vehicle. Cherek recalled that on December 4, 1987, she spoke with the plaintiff about the motor home. She testified:

> He said something, and this is not quote for quote, this is just what I can remember. That the motor home was going, and I said, "What do you mean?" And he got upset and he said, "You know I have no other alternative." And at that time I dropped the whole conversation and nothing else was said.

She also testified to a conversation she had with the plaintiff on December 8:

> Basically I walked in the door and he was sitting at my desk, and he looked very upset. I said, "What's wrong?" And he said something to the effect that the motor home was gone, there were problems, the battery had went out and that he was waiting for a phone call, and again he was very upset, and I dropped the conversation.

Cherek testified that approximately 2 weeks later she answered a phone call from the sheriff of Mills County and that when the plaintiff spoke to the sheriff the only comment that really stuck out was the plaintiff's question, "[D]id it burn or what?" She also testified that she was presently involved in a lawsuit with the plaintiff.

Bill Maliszwski testified that he had done upholstery work for the plaintiff between February 1988 and May 1989. He stated that toward the end of that time period the plaintiff had mentioned to him that he had a $25,000 lawsuit going against an insurance company and that "the people that knew about it, if they kept their mouth shut, got a piece of the cake when he got the check." When asked if the plaintiff had said anything about the disappearance of the motor home, Maliszwski said that the plaintiff mentioned that he had it arranged. Maliszwski also said that the plaintiff was aware that he, Maliszwski, lived in the Glenwood area and that the plaintiff asked him several times if he knew anybody down there who knew anything about the motor home being burned. He also testified that the plaintiff had asked for any bills he could place in his motor home file so

he could get reimbursed for them and that the plaintiff told him that the plaintiff was taking receipts from other work and claiming it was done on that particular motor home.

The plaintiff, in rebuttal, denied the conversations claimed by Maliszwski to have occurred particularly with reference to a $25,000 lawsuit, and also testified that Maliszwski had filed a lawsuit against him, the plaintiff, in small claims court because he had stopped payment on Maliszwski's last paycheck.

In regard to Cherek, the plaintiff stated that he was concerned that she had been taking business from him and that she had stolen money from his business to start her own. He also denied making the statements about the motor home which Cherek had attributed to him.

Prior to trial, the plaintiff had filed a motion in limine to preclude inquiry by the defendant into prior felony convictions of the plaintiff which were over 20 years old, and also to preclude inquiry into a recent plea of guilty or no contest to felony drug charges, upon which, however, the plaintiff had not yet been sentenced. The trial court sustained the motion.

After a jury verdict in favor of the plaintiff in the amount of $19,403, the defendant timely filed a motion for a new trial. The motion was based on the claimed error on the part of the trial court in excluding evidence of the plaintiff's recent drug convictions and in failing to grant a new trial on the basis of newly discovered evidence.

The newly discovered evidence was in the form of an affidavit from Cindy I. Waugh, in which she stated that she was acquainted with the plaintiff and that over the course of several conversations with him she had been told by him that he had arranged for the theft and burning of his motor home in order to collect insurance money. On the hearing on the motion for a new trial, the court received the affidavit of Waugh and also the affidavit of the defendant's counsel, Joseph Daly, in which he stated that he had been approached by Waugh on January 29, 1990, after the trial and that prior to that encounter he had not met her and could not, with reasonable diligence, have discovered that she had knowledge of facts or issues involved in the lawsuit. The court overruled the motion for a new trial.

The defendant has two theories as to why evidence of the

recent pleas to drug charges were relevant and should have been admitted.

One theory is based on Neb. Evid. R. 609, Neb. Rev. Stat. § 27-609 (Reissue 1989), which provides as follows:

(1) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (b) involved dishonesty or false statement regardless of the punishment.

. . . .

(5) Pendency of an appeal renders evidence of a conviction inadmissible.

It was the plaintiff's contention, with which the trial court apparently agreed, that "convicted of a crime," as used in this section, implies a judgment, i.e., a sentence of the court.

In *Marion v. State*, 16 Neb. 349, 20 N.W. 289 (1884), this court found that entering a plea of guilty without a judgment was not a conviction for the purposes of a statute affecting a witness' credibility. In that case, the court noted that if, in order to be a conviction, there must be a judgment of the court upon the plea, then the question as to a prior conviction was improper. The court found that the defendant's objection to such question should have been sustained, and stated:

There is a conflict of opinions and decisions upon this question, and by some text writers and courts of last resort it is maintained that the word "conviction" usually means the judicial ascertainment of guilt . . . . But we have found no case where the word as applied to the competency of a witness to testify has reference to anything short of the final judgment of the court upon a verdict or plea of guilty.

*Id.* at 361, 20 N.W. at 295. Similarly, in *Ford v. State*, 106 Neb. 439, 184 N.W. 70 (1921), the court again reviewed the same statute that it had in *Marion* and found that a plea of guilty does not show a conviction under the statute.

Defendant cites several cases from other jurisdictions which

suggest that a finding of guilt without a sentence is sufficient to allow its use as a conviction under a credibility statute.

In *State v. Bobo*, 414 N.W.2d 490, 494 (Minn. App. 1987), the court noted that under that state's applicable statute, " ' "Conviction" means any of the following *accepted and recorded* by the court: (1) a plea of guilty; or (2) a verdict of guilty by a jury or a finding of guilty by the court.' Minn.Stat. § 609.02, subd. 5 (1986)." (Emphasis in *Bobo*.) The defendant in *Bobo* had claimed he was improperly denied an opportunity to impeach a State's witness who testified he had never been convicted of a felony. The court found that since the trial court did not know the precise status of the witness' plea, i.e., whether the plea was accepted or conditional, it did not abuse its discretion in not allowing impeachment on this matter.

Although § 27-609 does not precisely define the term "conviction," it is significant to note that in the instant case, the record does not contain any public record of the plaintiff's plea and, therefore, does not indicate the nature of the pleas.

Perhaps of more significance in this case is the provision found in § 27-609(5) which states that "[p]endency of an appeal renders evidence of a conviction inadmissible." The Nebraska statute's interest in the finality of a conviction may be instructive as to the admissibility of a plea as well. Although in the instant case the record does not disclose that the plaintiff's "conviction" was on appeal, there could have been no appeal until a sentence had been imposed. See *State v. Long*, 205 Neb. 252, 286 N.W.2d 772 (1980) (a finding of guilty is a conviction, but it is not a judgment or final order, and there can be no appeal until a sentence has been imposed). It is also significant that a criminal defendant has at least a limited right to withdraw a plea prior to sentencing, although the burden is upon the defendant to establish the grounds for withdrawal by clear and convincing evidence. *State v. Hoffman*, 224 Neb. 830, 401 N.W.2d 683 (1987). To allow impeachment on the basis of conviction of a crime by virtue of the defendant's plea alone would prejudice those who would attempt to exercise their qualified right to withdraw a plea or those who would choose to appeal on the basis of a later imposed sentence when no such appeal opportunity was yet available.

We therefore hold that for the purposes of § 27-609, one has been convicted of a crime only after a finding of guilt, an imposition of a sentence, and the expiration of the time for appeal.

The defendant argues further, however, that the plaintiff's pleas in the recent drug cases should have been admissible as admissions which would be relevant to rebut the plaintiff's evidence of his income tax returns which showed that his income had not been declining. Apparently, those tax returns were, in the plaintiff's mind, a showing that business was not bad and that therefore, he had no motive to falsify an insurance claim. The defendant contends that showing the admissions of drug dealing would have rebutted the plaintiff's evidence as to his taxable income with evidence of additional sources of income, such as the sale of drugs. This reasoning is difficult to follow, since introducing evidence that the plaintiff earned additional income from the sale of drugs would not rebut the plaintiff's contention that his income had not declined.

In any event, as previously stated, the record does not show whether the plaintiff's "conviction" was by reason of a guilty plea or a plea of no contest. In *State ex rel. Nebraska State Bar Assn. v. Mathew*, 169 Neb. 194, 98 N.W.2d 865 (1959), this court considered whether a plea of nolo contendere could receive evidentiary consideration in a subsequent civil action. Unlike in the instant case, in *Mathew* the civil action involved the same issue as the criminal charge. However, the court noted the general rule that "a plea of nolo contendere in a criminal action may not be used in evidence in a civil action against the party making the plea." *Id.* at 197, 98 N.W.2d at 867.

The trial court did not err in refusing to permit the defendant's inquiry into the plaintiff's pleas in the recent drug cases.

There remains the question of whether the district court erred in refusing to sustain the defendant's motion for new trial on the basis of newly discovered evidence.

A motion for new trial on the basis of newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *Waite v. A. S. Battiato*

*Co., Inc.*, 238 Neb. 151, 469 N.W.2d 766 (1991).

A motion for new trial should be granted only where there is error prejudicial to the rights of the unsuccessful party. Unless such error appears, a party who has sustained the burden and expense of trial, and who has succeeded in securing a verdict on the facts in issue, has a right to keep the benefit of that verdict. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990).

A motion for new trial is entertained with reluctance and granted with caution, because of the manifest injustice in allowing a party to allege that which may be the consequence of its own neglect in order to defeat an adverse verdict, and, further, to prevent fraud and imposition which defeated parties may be tempted to practice to escape the consequences of an adverse verdict. *Fisher Corp. v. Consolidated Freightways*, 230 Neb. 832, 434 N.W.2d 17 (1989).

In order to make a sufficient showing for new trial upon the ground of newly discovered evidence, the proof in support thereof must show that such evidence was then available which neither the litigant nor counsel could have discovered by the exercise of reasonable diligence and that it was not merely cumulative, but competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would probably bring about a different result if a new trial were granted. *Federal Dep. Ins. Corp. v. Swanson*, 231 Neb. 148, 435 N.W.2d 659 (1989); *Fisher Corp. v. Consolidated Freightways, supra*.

The claimed newly discovered evidence was corroborative of the testimony of the witnesses Cherek and Maliszwski, which testimony had been directly contradicted by the plaintiff. If believed, it was evidence of statements made by the plaintiff by which he directly and unequivocally admitted that he had arranged for the theft and burning of his motor home. There is no substitute for the testimony of a live witness as to such information. Because of the denials of the plaintiff as to the information testified to by the other two witnesses, the newly discovered evidence was not cumulative.

The remaining question is whether this evidence could have been discovered by the exercise of due diligence on the part of

the defendant. According to the defendant's counsel's affidavit, it was on January 29, 1990, some 10 days after the completion of the trial herein, that in a chance meeting in the Douglas County Hall of Justice, Waugh approached counsel and told him that she knew about the lawsuit and about the incident involving the motor home and would be willing to testify.

During the hearing on the motion for new trial and during questioning of the defendant's counsel by the court, it became apparent that Waugh was a codefendant of Ipock in the drug cases. Counsel admitted that he examined only the court file on Ipock's cases and did not examine the police report, which he agreed probably would have revealed the name of the witness Waugh. However, the trial judge, in response to a statement by the plaintiff's counsel, asked, "[W]hy would he [the defendant's counsel] .need to do any more than just examine the court records to determine the fact of the conviction?"

We believe that statement by the court answers the question. There is no indication that the defendant should have known of the existence of this evidence at the time of trial, and there is nothing to suggest an absence of due diligence on the defendant's part.

The newly discovered evidence was competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would probably bring about a different result if a new trial were granted.

The district court's refusal to grant a new trial was an abuse of discretion, and its judgment is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

WHITE, J., concurs in the result.