RICHARD WOLFE AND PATSY WOLFE, HUSBAND AND WIFE, APPELLEES, V. BOBBY ABRAHAM, M.D., AND SURGICAL ARTS, P.C., APPELLANTS.

506 N.W.2d 692

Filed October 15, 1993.    No. S-91-728.

Stephen W. Kay, of Kay & Kay, for appellants.

James J. Paloucek and Royce E. Norman, of Kelley, Scritsmier & Byrne, P.C., for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

This is a case of alleged medical malpractice in which a verdict was returned in favor of the defendants-appellants, Bobby Abraham, M.D., and Surgical Arts, P.C. The district court thereafter sustained the motion for new trial filed by the plaintiff-appellee patient, Richard Wolfe, and his wife, the plaintiff-appellee Patsy Wolfe. The defendants challenge that ruling by asserting that the district court erred in determining that a new trial was required because of (1) the defendants' improper closing argument and (2) the existence of newly discovered evidence. We reverse, and remand with direction.

## II. SCOPE OF REVIEW

Our scope of review is defined by the rule that a motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Loving v. Baker's Supermarkets*, 238 Neb 727, 472 N.W.2d 695 (1991); *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990).

It is well established, however, that where a party has sustained the burden and expense of trial and has succeeded in securing a verdict on the facts in issue, that party has the right to keep the benefit of the verdict unless there is prejudicial error in the proceedings by which it was secured. Thus, a motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred. *Kumar v. Douglas County, supra; Bentz v. Nebraska P.P. Dist.*, 211 Neb. 844, 320 N.W.2d 763 (1982); *Bodzek v. Callahan*, 211 Neb. 600, 319 N.W.2d 721 (1982); *Law v. Gilmore*, 171 Neb. 112, 105 N.W.2d 595 (1960). We have also observed that a motion for new trial is to be entertained with reluctance and granted with caution, because of the manifest injustice in allowing a party to allege that which may be the consequence of its own neglect in order to defeat an adverse verdict, and, further, to prevent fraud and imposition which defeated parties may be tempted to practice to escape the consequences of an adverse verdict. *Ipock v. Union Ins. Co.*, 242 Neb. 448, 495 N.W.2d 905 (1993); *Fisher Corp. v. Consolidated Freightways*, 230 Neb. 832, 434 N.W.2d 17 (1989); *Gruenewald v. Waara*, 229 Neb. 619, 428 N.W.2d 210 (1988); *Smith v. Erftmier*, 210 Neb. 486, 315 N.W.2d 445 (1982).

Consequently, the discretion of a trial court in ruling on a motion for new trial is only the power to apply the statutes and legal principles to all facts of the case; a new trial may be granted only where legal cause exists. A trial court may not grant a new trial merely because it would reach a different result than did the jury. *Bentz v. Nebraska P.P. Dist., supra.*

## III. FACTS

The patient saw John L. Batty, M.D., because of upper abdominal pain. Batty suggested a gastroscopy, a procedure whereby a flexible tube with a light source is inserted through the mouth into the stomach, allowing the examiner to look for ulcers or other abnormalities. Batty then contacted Abraham, a solo practitioner practicing under the corporate name Surgical Arts, P.C., who attempted to perform the procedure at a hospital in McCook, Nebraska, where Abraham was the chief of surgery.

During the attempt, Abraham, over a period of approximately 20 minutes, administered 65 milligrams of Valium in four doses. Despite administration of the drug, the patient did not get sleepy as was expected, and he pushed the tube away with his hand whenever Abraham attempted to insert it into the patient's mouth. Abraham terminated the attempt sometime after 9:20 a.m., and a nurse then took the patient to the recovery room for observation. She released him to his wife at 11:30 a.m.

According to the wife, when the patient was brought to her, he was ashen gray and he did not look at her, but just stared straight ahead. Moreover, he could neither step up onto the curb nor get into the vehicle which was waiting for him outside the hospital without her help.

In reply to the plaintiffs' interrogatories, Abraham stated that the patient did not sustain any neurological or psychological damage on the day of the attempted procedure, but Abraham believed that the patient had some preexisting abnormalities.

The evidence at trial is irreconcilably in conflict. On the one hand, there is expert testimony from Colorado physicians that Abraham administered an excessive amount of Valium and that as a result, the patient suffered brain damage. There is also lay testimony that since the attempted procedure, the patient has experienced a reduction of intellectual capacity and physical ability. In addition, the plaintiffs established that physicians refer for guidance in administering drugs to a publication known as the Physicians' Desk Reference, which states that 10 milligrams of Valium or less are generally adequate and that up to 20 milligrams may be given. On the other hand, there is expert testimony from Nebraska physicians that in administering the amount of Valium he did, Abraham met the appropriate standard of care or skill, and, further, that the patient suffered no undesirable effects as a result of the attempted gastroscopy.

In the course of their closing argument, the defendants told the jury:

> [W]hat you have here, you have a couple of plaintiffs who are coming in here and saying that your local hospital and

a former local doctor violated the standard of care in the treatment of [the patient]. And that's going to be one of the decisions that you're going to have to make up your mind on.

. . . .

And that's all they have. Two doctors from Colorado. They didn't come up with anybody from around here, did they? They didn't come up with anybody from Nebraska. They have to go to Denver to get two doctors, and they have one that testifies to the standard of care and the other one testifies as to causation.

And I don't want to give you the idea that I'm belittling these doctors or anything like that. But if you think — [plaintiffs' counsel] stands up and tells you about that PDR, this drug book, and 65 milligrams. If this was so horrible, don't you think that he could have got some doctors in this area or around this area, in Nebraska, that could come in here and say . . . Abraham was wrong in giving 65 milligrams of Valium; . . . Abraham caused this problem, that this brain injury — alleged brain injury was caused by the Valium?

And you know why he didn't bring somebody in? He couldn't find one. He had to go to Denver and get somebody that charged $300 an hour — you heard that, $300 an hour — that sat here I don't know how long, but practically a whole full day. You saw that. $300 an hour, to tell you that your local hospital, who I think has an excellent reputation, and . . . Abraham, who's a board certified surgeon, who has an excellent reputation, is negligent.

The defendants also reminded the jury that the expert witnesses testifying on their behalf were from Nebraska. As to the defendants' expert who had recently left McCook to practice in Kearney, the defendants said: "I don't know if any of you know him, I don't know if any of you went to him when he was here, but I can tell you this: You lost a real fine man, a real intelligent doctor."

Near the end of their argument, the defendants urged: "[S]end a message, send a message that these people cannot

come into Red Willow County in this type of a situation, on the evidence they presented in this case, and [attack] your local hospital and [attack] your local doctor, on this kind of evidence." The plaintiffs did not object to the comments made by the defendants, nor did they move for a mistrial.

With respect to their claim that there is newly discovered evidence, the plaintiffs, in support of their motion for new trial, submitted an affidavit in which the wife attested that after the verdict had been returned, Abraham told her that he believed the patient "had slight problems before" the attempted procedure, that the procedure had "pushed him over the edge," and that he had earlier told the administrator of the hospital that he "hoped the jury would return a verdict for the plaintiffs."

Although Abraham admits having a conversation with the wife and further declares that he said "six years had gone by from the time [he] saw [the patient] and very valuable time had been lost," he denies making the statements she attributes to him.

## IV. ANALYSIS

With those pertinent facts in mind, we turn to the defendants' assignments of error.

### 1. CLAIM OF IMPROPER CLOSING ARGUMENT

In the first of these, the defendants urge that the district court mistakenly ruled that the defendants' closing argument improperly exploited the jury's bias in favor of local physicians and was so prejudicial that the plaintiffs' failure to object to the argument should be excused.

We agree with the plaintiffs' position that appeals to local sentiment in closing arguments are highly improper and are not to be countenanced; cases are to be argued on their facts without playing to a jury's prejudice. *Pederson v. Dumouchel*, 72 Wash. 2d 73, 431 P.2d 973 (1967). And it is true, as the plaintiffs note, that some jurisdictions suggest that in extreme situations in which the sinister effects of grossly improper remarks cannot be corrected by either retraction or rebuke by the trial court, the failure to object is excused. E.g., *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835 (Tex. 1979); *Pederson v.*

*Dumouchel, supra; Nelson v. Martinson*, 52 Wash. 2d 684, 328 P.2d 703 (1958); *Colquett v. Williams*, 264 Ala. 214, 86 So. 2d 381 (1956); *Hilliard v. A.H. Robins Co.*, 148 Cal. App. 3d 374, 196 Cal. Rptr. 117 (1983); *Terracina v. Castelli*, 80 Ill. App. 3d 475, 400 N.E.2d 27 (1979); *Carlton v. Johns*, 194 So. 2d 670 (Fla. App. 1967); *Griffith v. Casteel*, 313 S.W.2d 149 (Tex. Civ. App. 1958).

However, in this jurisdiction the controlling principle is that one may not waive an error, gamble on a favorable verdict, and, upon obtaining an unfavorable result, assert the previously waived error. *Fisher Corp. v. Consolidated Freightways*, 230 Neb. 832, 434 N.W.2d 17 (1989). Accordingly, we have consistently held that in order to preserve, as a ground of appeal, an opponent's misconduct during closing argument, the aggrieved party must have objected to the improper remarks no later than at the conclusion of the argument. *Marple v. Sears, Roebuck & Co., ante* p. 274, 505 N.W.2d 715 (1993); *Sandomierski v. Fixemer*, 163 Neb. 716, 81 N.W.2d 142 (1957), *superseded on other grounds, Kennedy v. Kennedy*, 221 Neb. 724, 380 N.W.2d 300 (1986).

Plaintiffs' suggestion that we have heretofore carved out exceptions to the foregoing rule is unfounded. While it is true that in *Patterson v. Swarr, May, Smith & Anderson*, 238 Neb. 911, 473 N.W.2d 94 (1991), the trial court, in overruling a motion for mistrial because of an improper argument, stated that the issue could be raised postverdict, we held only that an antecedent objection to an improper argument is not required in order to move for a mistrial on that ground. The motion for mistrial in *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984), related not to an improper argument, but to the adduction of evidence; in that context, we ruled that as a mistrial motion could not be used as a substitute for a timely objection to the evidence, a mistrial could not be sought for the improper receipt of evidence to which no prior objection had been made. *Hall v. Rice*, 117 Neb. 813, 223 N.W. 4 (1929), holds only that when an objection has been sustained to an improper remark made during the course of the opening statement, the objection need not be repeated to a like comment made during the closing argument.

In point of fact, we do not permit a party to gamble on a favorable result and later complain of a waived error even where the misconduct spews from the mouth of the trial judge. *Pitt v. Checker Cab Co.*, 217 Neb. 600, 350 N.W.2d 507 (1984).

It also is to be noted that an aggrieved party wishing a mistrial because of an opponent's misconduct during argument is now required to move for such before the cause is submitted; at the time of the trial at hand, however, such a motion could have been made at any time before the verdict was returned. See *Harmon Cable Communications v. Scope Cable Television*, 237 Neb. 871, 468 N.W.2d 350 (1991).

## 2. CLAIM OF NEWLY DISCOVERED EVIDENCE

In the second assignment of error, the defendants argue that the district court incorrectly concluded that there exists newly discovered evidence which requires a new trial.

The plaintiffs, on the other hand, argue that Abraham's postverdict statements to the wife establish that he held an opinion favorable to the plaintiffs, but that they were unable to discover that fact because of Abraham's denial in answer to their interrogatories of any neurological or psychological damage on the day of the attempted procedure and his refusal to answer, when being deposed, whether the patient then demonstrated a neurological deficit.

It is appropriate to recall at this point that in order to warrant the granting of a new trial because of newly discovered evidence, the movant must establish that the evidence at issue could not have been discovered through the exercise of reasonable diligence by either the litigant or counsel, that the evidence is not merely cumulative, and that the evidence is competent, relevant, and material and of such a character as to reasonably justify a belief that its admission would bring about a different result if a new trial were granted. See, *Ipock v. Union Ins. Co.*, 242 Neb. 448, 495 N.W.2d 905 (1993); *Federal Dep. Ins. Corp. v. Swanson*, 231 Neb. 148, 435 N.W.2d 659 (1989), *overruled on other grounds, Eccleston v. Chait*, 241 Neb. 961, 492 N.W.2d 860 (1992).

The plaintiffs suggest that Abraham's observation that 6 years have passed since he last saw the patient and that as a

result valuable time has been lost somehow establishes an admission of negligence on Abraham's part. The notion is untenable. If the statement means anything, it is nothing more than a recognition that the patient's condition, whatever it is, is now of long standing.

Neither do the statements the wife ascribes to Abraham provide a basis for depriving the defendants of the benefit of the verdict. Whatever Abraham's alleged remark that he hoped a verdict would be returned for the plaintiffs may have been intended to convey, it does not rise to the level of a postverdict admission of preverdict negligence. See *Tamper v. Schaper*, 748 S.W.2d 183 (Mo. App. 1988) (as statements in malpractice action did not clearly constitute admission, trial court did not abuse discretion in refusing to receive into evidence physician's statements he personally liked claimant and did not care if she got money).

While it is true that the other comment attributed to Abraham, that the administration of the Valium pushed the patient's preexisting neurological and psychological abnormalities over the edge, can be understood to contradict Abraham's answer to the plaintiffs' pretrial interrogatories that the patient sustained no damage on the day of the attempted procedure and is, to that extent, new information, it nonetheless does not constitute an admission that in Abraham's opinion, the amount of Valium he administered violated the requisite standard of care. In the absence of such an admission, the statement that the Valium pushed the patient over the edge has no legal relevance. See, *Sutton v. Calhoun*, 593 F.2d 127 (10th Cir. 1979) (trial court properly refused to instruct that surgeon's statement he had made mistake in cutting duct was admission of negligence); *Phillips v. Powell*, 210 Cal. 39, 290 P. 441 (1930) (physician's statements that it was his fault in using particular knife during surgical operation and that he had a slight accident and had broken a knife in the operation, but in spite of bungling job thought boy was going to pull through, and his failure to reply to mother's statements that she felt boy's injuries were fault of physicians held not to constitute admissions that physicians did not possess and use requisite degree of skill); *Donahoo v. Lovas*, 105 Cal. App. 705, 288 P.

698 (1930) (admission that alcohol should not have been injected held to be expression based on results of injection and of no value in showing whether ordinary skill used); *Markart v. Zeimer*, 67 Cal. App. 363, 227 P. 683 (1924) (physician's statements that "misoperation" and "wrong operation" resulted in further injury held to be admission that operation was not properly performed, but not sufficient to establish liability, as did not admit negligence); *Smith v. Karen S. Reisig, M.D., Inc.*, 686 P.2d 285 (Okla. 1984) (physician's characterization of injury in medical records as "inadvertent injury of bladder" merely described result and was not admission that care was substandard).

## V. JUDGMENT

For the foregoing reasons, the district court abused its discretion in granting a new trial. We thus reverse the district court's judgment and remand the cause with the direction that the district court enter judgment in accordance with the verdict.

REVERSED AND REMANDED WITH DIRECTION.