IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KISER V. GRINNELL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


WILL C. KISER, APPELLEE,

V.

ARIEL P. GRINNELL, APPELLANT.


Filed February 7, 2017.    No. A-16-477.


Appeal from the District Court for Washington County: JOHN E. SAMSON, Judge. Affirmed.

Jeffrey A. Wagner, of Schirber & Wagner, L.L.P., for appellant.

James A. Adams, of Law Offices of James A. Adams, P.C., L.L.O., for appellee.


MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Ariel P. Grinnell appeals from an order of the district court for Washington County granting a motion for new trial by Will C. Kiser on the basis of newly discovered evidence and vacating its prior decree of paternity and custody. Finding no abuse of discretion by the court, we affirm.

## II. BACKGROUND

Ariel and Will are the parents of one minor child, S.G., born in August 2011. The parties have never been married.

### 1. COMPLAINT FOR ESTABLISHMENT OF PATERNITY, CUSTODY, AND VISITATION

On January 7, 2014, Will filed a complaint for establishment of paternity, custody, and visitation rights. Will requested that the parties be awarded joint legal custody, with sole physical

- 1 -

custody to Ariel subject to reasonable and liberal parenting time by Will. At the time of this complaint, Will resided in Westminster, Colorado and Ariel resided in Ft. Calhoun, Nebraska. On February 10, 2014, Ariel filed an answer and counterclaim, requesting that she be granted both sole legal and physical custody of S.G.

### 2. TEMPORARY ORDER

On July 10, 2014, the district court entered a temporary order awarding the parties temporary joint legal custody, with sole physical custody of S.G. granted to Ariel. The temporary order also established parenting time, child support, and the division of health care and daycare expenses. In August 2014, Will moved to Williston, North Dakota as the result of an employment based relocation.

### 3. MOTION FOR LEAVE TO AMEND COMPLAINT

On June 17, 2015, Will filed a motion for leave to amend complaint, alleging that Ariel fabricated and/or embellished allegations of physical and sexual abuse by Will against S.G. Will's motion was granted. On July 9, Will filed an amended complaint, requesting sole legal and sole physical custody be awarded to him, along with child support. In the alternative, Will requested joint legal and joint physical custody of S.G. with a reasonable parenting time schedule. Ariel filed an answer denying that such an award should be made.

### 4. MOTION TO COMPEL

On September 1, 2015, Will filed a motion to compel, seeking the address and phone number of Ariel's boyfriend, Taylor. In support of this motion, Will stated that he sent discovery requesting Ariel to provide contact information for every person with knowledge or information concerning this matter. This request took the form of Interrogatory No. 13, which stated "[p]lease state the name, current address and phone number of each and every person who has knowledge or information concerning the matters contained within the pleadings in this matter, specifying for each person listed what occurrence, events, facts or circumstances such person has knowledge or information." Ariel disclosed 13 different people, but did not identify or disclose her current boyfriend, Taylor. Will further alleged that he sent a letter to Ariel's counsel requesting disclosure of Taylor's contact information, with no success. Lastly, Will alleged that "the statements that (Ariel) has made to (Taylor) are admissible evidence" and "[i]t is believed that (Ariel) has made comments to (Taylor) about this pending custody case and about (Will) himself."

On September 8, 2015, a hearing was held on this motion to compel. The court directed that "the name, address, and telephone number" of Taylor be disclosed by Ariel to Will. A corresponding journal entry was filed on September 10. On September 9, Will's counsel filed a praecipe for subpoena for Taylor to appear at trial on September 14 and 15, 2015.

### 5. TRIAL ON AMENDED COMPLAINT

A trial on Will's amended complaint occurred on September 14 and 15, and November 20, 2015, and February 4, 2016. Beyond his own testimony, Will called 11 witnesses, including a child and family services specialist with Nebraska Health and Human Services, a police detective, a mental health therapist, a preschool teacher, a children's hospital records custodian, a pediatric

nurse practitioner with Project Harmony Child Advocacy Center, and the parties' respective parents. Ariel testified on her own behalf, and called Will and his father for rebuttal, but did not call any additional witnesses. Will offered numerous exhibits into evidence during this trial, including child protective services reports, medical records, Ariel's journal, photographs, financial records, a proposed parenting plan, and child support calculations. Ariel offered several exhibits into evidence at trial, including photographs, text messages, financial records, a proposed parenting plan, and child support calculations.

Taylor was not called by counsel for either party at trial. There is no record of Taylor being deposed by Will's counsel or any additional subpoenas being issued for Taylor. Will testified at the conclusion of trial that he and his counsel were unable to get the subpoena to appear at trial served upon Taylor. No return of service documents were included in the record.

We need not include in the background a recitation of all of the evidence adduced at trial, except to note that Kiser produced testimony attempting to show that Grinnell had made false allegations against him concerning abuse of S.G.

### 6. DECREE OF PATERNITY AND CUSTODY

On February 19, 2016, the court issued a decree of paternity and custody. The court awarded Ariel sole legal and physical custody of the minor child, finding such was in the best interest of the child, subject to reasonable and liberal parenting time with Will.

The court addressed the extensive testimony during trial regarding the physical and sexual abuse allegations directed at Will. The court made the following factual findings:

> On or about March 8, 2015, (Ariel) observed a change in the behavior of the minor child shortly after picking her up from her monthly visitation with her father. (Ariel) and her mother described the problems they observed with the minor child's behavior such as nightmares, regression in potty training, and a more subdued personality after visits with her father. After consulting with a family friend in the healthcare industry, (Ariel) and her mother decided they needed to take the minor child to Children's Hospital emergency room to have her examined for the unusual behavior and hygiene issues they were observing. The hospital personnel advised that there were no signs of abuse or assaultive behavior or other serious health issues.

> In addition to the March 8, 2015 visit to Children's Hospital, (Ariel) also presented the child, to various investigatory bodies, for abuse assessments on or about March 17, 2015, April 6, 2015, and April 16, 2015. No safety threats were identified by the investigatory personnel despite (Ariel's) various claims of physical and sexual abuse.

> In following up on the unusual behavior of the minor child, (Ariel) also had the child examined by an experienced mental health pediatric therapist to provide counseling for the child's regression in potty training, nightmares, and general changes in the child's behavior which (Ariel) and mother observed. The therapist began her consultation with the minor child on or about March 26, 2015 and has had regular consultations with the child since that date.

The court subsequently addressed Will's argument in response to such allegations of abuse and resulting treatment as follows:

(Will) argues that (Ariel's) proclivity to subject a three year old child to multiple physical exams and interviews by investigatory bodies shows poor judgment on behalf of (Ariel) and a conspiracy by her family to restrict (Will's) access to the child. The Court found the maternal grandmother and grandfather to be credible witnesses in regard to what they saw and heard from (S.G.) and that there was not a maternal family conspiracy. It is possible, however, that (Ariel) overreacted to some of the child's physical conditions/bruises and to the statements and behavior of the minor child. Moreover, some of the events described by (Ariel) may have been somewhat embellished by her. With that said, the Court cannot say that the record is devoid of any facts which taken together, could not have created a reasonable suspicion, at the time, of something untoward happening while the child was with (Will). Even though, as indicated above, the abuse claims were investigated and no safety threats rising to the level of child abuse were found, the Court finds there were some visible marks on the child and some unusual behavior exhibited and statements made by the child which could lead to a reasonable suspicion. For instance, (i) there was a facial bruise which itself was not too alarming but must be considered in the totality of events; (ii) the child did regress in potty training; (iii) the child was suffering from nightmares (which the therapist has not been able to establish causation); and (iv) lastly there were somewhat unusual statements and actions made by the child. For example, during a forensic interview on March 17, 2015 at Project Harmony, the child did state that she had touched her father's penis - (Will) denied the child inappropriately touched him. In addition, shortly after the 2015 Easter visit with her father, the child exhibited unusual physical behavior which caused the preschool teacher to make a report to the public authorities. Moreover, the maternal grandparents observed the child acting out motions which mimicked male masturbation.

The court proceeded to reach the following conclusion:

There is no evidence at this time to support a conclusion of inappropriate behavior by (Will), but the totality of the circumstances back in March-May, 2015, supports a reasonable suspicion on behalf of (Ariel) which, at the time, prompted her and her family to follow up with abuse investigations and pediatric counseling. The Court cannot say that the multiple abuse investigations initiated by (Ariel) were totally frivolous or out of the realm of reasonable behavior. In conclusion, although there may have been some overreaction by (Ariel), there was sufficient evidence, at the time, to support a reasonable suspicion for the investigatory actions taken by (Ariel).

(Ariel) acted reasonably in soliciting the services of the mental health pediatric therapist to address the child's perceived emotional issues.

In reaching its decision to grant sole custody of S.G. to Ariel, the court considered additional factors impacting the minor child's best interests. The court found that Will had a legitimate reason to relocate to North Dakota for work, and Will's request for S.G. to live with

him in North Dakota and Ariel's objection to this request were not the result of improper motivation. The court determined that both parties can safely provide for the child's care and have stable employment and housing; thus, these factors weighed equally between custody to either party. The court found that S.G. is more closely bonded to Ariel and her family who reside in Omaha, which weighed in favor of awarding custody to Ariel. The court also found that Ariel offers a good home environment and family support, and S.G. attends daycare and preschool at the same Catholic parochial school where Ariel works as an elementary teacher. The court found these factors to weigh slightly in favor of custody being awarded to Ariel.

### 7. MOTION FOR NEW TRIAL

On February 29, 2016, Will filed a motion for new trial, motion to amend/modify, and motion to clarify. Will asserted that "[t]he custody and parenting time decisions by the Court should be reconsidered because of newly discovered evidence." During the hearing discussed below, the court decided to treat this motion solely as a motion for new trial with regard to the primary matter on appeal, the issue of custody.

### 8. HEARING ON MOTION FOR NEW TRIAL ON BASIS OF NEWLY DISCOVERED EVIDENCE

On April 12, 2016, a hearing was held on the motion for new trial. In support of his motion, Will's counsel offered into evidence two affidavits by Will. Ariel's counsel offered into evidence original and supplemental affidavits by Ariel, a copy of the request for production of documents served upon Ariel prior to the original hearing, a copy of Will's interrogatories served on Ariel, and a copy of the deposition of Ariel.

The focus of the hearing were text messages and sexually explicit text photographs exchanged between Ariel and Taylor located on an iPad belonging to Ariel. Will stated within his affidavit that S.G. brought the iPad with her during a visit with Will occurring from February 27 to March 12, 2016. During this visit, Will stated that S.G. accessed these text messages and was able to locate inappropriate, intimate photographs "in a very short time" while playing with the iPad. The text messages between Ariel and Taylor consisted of the following conversations:

Taylor: At what age can she decide that she doesn't want to see him?

Ariel: Realistically 9 or 10 with Lisa's help

I just worry how bad the language and everything is going to get, we've made so much progress. But Lisa documents every negative thing (S.G.) says so if it ever becomes an issue we have a professional on our side.

Taylor: Is Lisa the play therapist?

Ariel: yes, she is amazing

Taylor: That's good

. . . .

Ariel: Tomorrow's going to be a long day

Taylor: Why is that

Ariel: We have to meet with project harmony and see what they're going to be able to do for our case and basically we find out what we have to do to prepare for April

Taylor: I see

Ariel: Hopefully it'll just go smoothly and there won't be too much to do before April but who knows it could go either way

Taylor: Hopefully

. . . .

Ariel: . . . has marks all over her body, she's been saying horrible things that were said to her, it's just gone to the next level

Taylor: Oh geez

Ariel: Yea it's just bad. My lawyer is confident that this will be the straw to break the camels (sic) back, he's out of chances, so hopefully this will get wrapped up and I won't have to send her to a bad situation anymore.

Taylor: I see. She didn't seem to be acting that weird though

Ariel: Yea she had calmed down, she was excited to see you guys.

Taylor: Good

Will alleged that he reviewed and captured these text messages and photographs on February 29, 2016, after the trial had concluded and the decree had been entered.

Will requested that the court consider these messages as newly discovered evidence, demonstrating that Ariel's goal was and continues to be restricting his involvement with S.G. Further, Will expressed shock that sexually explicit material was available on an iPad which S.G. has ready access to, plays with on a regular basis, and understands how to navigate. Will asserted that any sexual behavior displayed by S.G. resulted from exposure to inappropriate material on the iPad rather than his actions.

Ariel responded in her affidavit that S.G. never plays on the iPad unsupervised, and it was accidently sent along in S.G.'s "car entertainment bag" during the visit. Further, she claimed that it would have taken over an hour of scrolling through text messages for S.G. to have accessed the explicit photographs.

At the conclusion of the hearing, the court stated that the comments between Ariel and Taylor contained in the text messages were "clearly" made "at or about the time of the different entities doing their investigations." The court also noted the dates contained within the screen shots. Specifically, the court described its process as follows:

> [W]hen you look at the text messages and you look at the photographs, and then to the left of it there appears to be some dates and I'm kind of equating the two together just based on this. And if that's the way I'm reading it, that's how I'm trying to interpret when, in the scheme of the whole trial in this case and the pendency of this, did these things allegedly happen? And so that's how I'm trying to equate those two timewise, is using those to the best I could.

The court found the nature and timing of the text messages to be consistent with Will's theory at trial that the abuse allegations were made for the purpose of positioning for the custody case and restricting his parenting time. Specifically, the court noted that "[o]ne of (Will's) theories clearly came across that all of the investigation with (Child Protective Services) and Project

Harmony and all those things were done not . . . in (S.G.'s) best interests, but to set up a case on custody."

The court stated that the applicable standard to apply is "whether or not if that information were (sic) before me, could it have changed the decision?" The court proceeded to comment that "had these issues been raised during trial it could have affected my rationale that I took specific efforts to make in my order on the reasonableness . . . of going to Project Harmony . . . [t]he conversations alone may have impacted that." Also, the court remarked "the fact that . . . a parent . . . provides the child with an instrument that may put the child in a situation of accessing these kind (sic) of photographs may have impacted my decision." On April 15, the court entered an order granting Will's motion for new trial and vacating its prior February 2016 paternity decree.

Ariel subsequently perfected this appeal.

## III. ASSIGNMENTS OF ERROR

Ariel assigns, restated, that the district court erred in granting a new trial on the basis of newly discovered evidence because such evidence (1) was not obtained by Will prior to trial as a result of his own lack of due diligence and neglect, (2) was not newly discovered evidence, and (3) is not of such a nature that it would likely lead to a different outcome.

## IV. STANDARD OF REVIEW

A motion for new trial on the basis of newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015). An appellate court will not ordinarily disturb a trial court's order granting a new trial and will not disturb it at all unless it clearly appears that no tenable grounds existed therefor. *Springer v. Bohling*, 263 Neb. 802, 643 N.W.2d 386 (2002).

Deference to a trial court's grant of a new trial stems in part from the recognition that the trial judge is better situated than a reviewing court to pass on questions of witness credibility and the surrounding circumstances and atmosphere of the trial. *Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 629 N.W.2d 511 (2001). The trial judge sees the witnesses, hears the testimony, and has a special perspective on the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record; for this reason, the trial judge is accorded significant discretion in granting a new trial. *Id*.

## V. ANALYSIS

### 1. MOTION FOR NEW TRIAL

A new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court. The former verdict, report, or decision shall be vacated and a new trial granted on the application of the party aggrieved for any of the following causes affecting materially the substantial rights of such party: . . . (7) newly discovered evidence, material for the party applying, which the moving party could not, with reasonable diligence, have discovered and produced at the trial. Neb. Rev. Stat. § 25-1142(7) (Reissue 2016).

In order to make a sufficient showing for a new trial on the ground of newly discovered evidence, the proof in support thereof must show that such evidence is now available which neither the litigant nor counsel could have discovered by the exercise of reasonable diligence and that the evidence is not merely cumulative, but competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would bring about a different result if a new trial were granted. *Betterman v. Department of Motor Vehicles*, 273 Neb. 178, 728 N.W.2d 570 (2007).

Motions for new trial are entertained with reluctance and granted with caution, because of the manifest injustice in allowing a party to allege that which may be the consequence of the party's own neglect in order to defeat an adverse verdict, and, further, to prevent fraud and imposition. *State Ex Rel. Keegan M. v. Joshua M.*, 20 Neb. App. 411, 824 N.W.2d 383 (2012). See, also, *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993). A court should sustain a motion for new trial only when an error has occurred that is prejudicial to the rights of the unsuccessful party. *Balames v. Ginn*, 290 Neb. 682, 861 N.W.2d 684 (2015).

(a) Application for New Trial

We first address Ariel's argument, contained in her reply brief, that Will's motion for new trial failed to comply with Neb. Rev. Stat. § 25-1144 (Reissue 2016) because it failed to assert that the newly discovered evidence could not have been discovered during term with the exercise of reasonable diligence.

The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). Errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief. *Id*. However, an appellate court may, at its option, notice plain error. *United Cold Storage v. City of La Vista*, 285 Neb. 579, 831 N.W.2d 23 (2013). Ariel urges us to consider this alleged deficiency under a plain error analysis.

Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Kuhnel v. BNSF Ry. Co.*, 287 Neb. 541, 844 N.W.2d 251 (2014).

In support of her argument that plain error exists, Ariel cites to the case of *DeVaux v. DeVaux*, 245 Neb. 611, 622, 514 N.W.2d 640 (1994), *superseded by statute on other grounds* (citing *Smith v. Goodman*, 100 Neb. 284, 159 N.W. 418 (1916)), which held that a motion for new trial on the grounds of newly discovered evidence must allege that the evidence could not have been discovered during term with the exercise of reasonable diligence.

We conclude that to the extent Will's motion for new trial was deficient for failing to allege that the evidence could not have been discovered with the exercise of reasonable diligence, such a deficiency did not rise to the level of prejudicially affecting a substantial right belonging to Ariel. She was clearly put on notice that Will was seeking a new trial on the issues of custody and parenting time because of newly discovered evidence. Ariel defended the motion by arguing that Will failed to exercise reasonable diligence in discovering the evidence before or during trial. We decline to find plain error under these circumstances.

### (b) Discoverable Through Exercise of Due Diligence

Ariel argues that Will's failure to obtain the alleged new evidence before or during trial was a result of his own lack of due diligence and neglect.

Newly discovered evidence is not sufficient reason for a new trial if diligence before the trial would have produced notice or knowledge of the alleged recently discovered evidence. *Woodhouse Ford, Inc. v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004). See, also, *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994), *superseded by statute on other grounds* (newly discovered evidence is not grounds for a motion for new trial where the exercise of reasonable diligence would have produced the evidence. For purposes of a motion for new trial on the basis of newly discovered evidence, "reasonable diligence" means appropriate action where there is some reason to awaken inquiry and direct diligence in a channel in which it will be successful. *DeVaux, supra*. See, also, *Alisha C. v. Jeremy C.*, 283 Neb. 340, 346, 808 N.W.2d 875, 881 (2012).

Upon our review, we find that the exercise of reasonable due diligence would not have produced the newly discovered text messages and photographs. Therefore, the court's consideration of this evidence did not amount to an abuse of discretion on this basis.

In his motion to compel disclosure of Ariel's boyfriend's name and contact information, Will alleged that he suspected Ariel had made comments to her boyfriend about the pending custody case and about Will himself. The contact information was apparently given to Will after the court ordered the disclosure, as a subpoena was issued for service upon Taylor. While Will testified that he was unable to serve the subpoena upon Taylor, the court agreed with Ariel that the record lacked evidence to show Taylor dodged the subpoena. The initial subpoena sought Taylor's presence on September 14. Will did not attempt to serve another subpoena for any of the subsequent days of trial, did not seek a continuance to obtain Taylor's presence or pursue a deposition, and did not seek production of any record of communication between Ariel and Taylor. On the other hand, Will did seek disclosure of any text messages from Ariel in support of her request for sole custody.

Will's interrogatory requesting contact information of persons with knowledge of the case and the basis for their knowledge, and demand for document production seeking text messages in support of Ariel's request for sole custody, were reasonably diligent discovery efforts. Nothing in Ariel's discovery responses, or in her trial testimony, was sufficient to awaken inquiry towards the specific communications at issue, which were beyond Will's reasonable knowledge. Even if Taylor had been deposed and/or testified at trial, the newly discovered evidence of a conspiracy to make false allegations of abuse and inappropriate photographs accessible to S.G. would most likely not have been revealed, despite a reasonable effort on the part of Will's attorney to elicit such evidence. It is highly doubtful that Taylor would have volunteered evidence of a conspiracy or explicit photographs contained on Ariel's device, particularly considering that Ariel did not disclose this information.

We find no error in considering this new evidence on the grounds of it not being previously discoverable through the exercise of due diligence.

Ariel's first assignment of error is without merit.

## 2. NEWLY DISCOVERED EVIDENCE

Ariel asserts that the text messages and photographs did not qualify as newly discovered evidence.

Under Neb. Rev. Stat. § 25-1142, a new trial may be granted if new evidence has been discovered which materially affects the substantial rights of the moving party. *Betterman v. State DMV*, 273 Neb. 178, 197, 728 N.W.2d 570, 589 (2007). However, evidence of facts occurring after a trial ordinarily cannot be made the basis for a motion for new trial on the ground of newly discovered evidence. *In re Interest of S.H.*, 225 Neb. 452, 406 N.W.2d 112 (1987); *Martinez v. Peterson*, 212 Neb. 168, 322 N.W.2d 386 (1982); See, also, *Sullivan v. Hoffman*, 207 Neb. 166, 173, 296 N.W.2d 707, 712 (1980) (quoting *Wagner v. Loup River Public Power Dist.*, 150 Neb. 7, 11, 33 N.W.2d 300, 303 (1948)) (new trial will not be granted on the ground of newly discovered evidence where it appears that such evidence was not available at the time of the trial, but rather the result of changed conditions since).

Ariel argues that it is impossible to determine from the record the date the text messages and photographs were exchanged between herself and Taylor. Ariel claims that the court's method of dating the text messages and photographs was faulty. Further, she asserts it was only known that S.G. accessed the photographs after trial and entry of the decree, and no specific evidence indicated that S.G. viewed the photographs, or that the photographs even existed, prior to the conclusion of trial. Ariel insists that S.G.'s observation of the photographs is "simply something occurring after the entry of the Decree," and that such a "changed condition" is "not the basis of granting a Motion for New Trial." Rather, she notes that the proper method for seeking redress on the basis of new evidence accruing after trial is through modification of the decree.

Upon our review, we find that the district court's determination that the text messages and explicit photographs were newly discovered evidence did not amount to an abuse of discretion.

First, the content of the text messages supports the district court's conclusion that at least some of the conversations occurred around the time of the various abuse investigations initiated by Ariel prior to trial.

Second, the dates contained within the screen shots of sexually explicit photographs exchanged between Ariel and Taylor similarly indicate that some of the photographs existed on the iPad prior to trial. The record reflected that the iPad was available to S.G. to play with during and prior to trial. Ariel's affidavit indicates that S.G. began playing with the iPad during the summer of 2015, and various children's games were downloaded to the device during this period. While the alleged act of S.G. accessing the photographs after trial standing alone does not qualify as newly discovered evidence, the court did not abuse its discretion in considering the existence of these photographs on a device accessible to S.G. prior to and during trial as newly discovered evidence.

Ariel's second assignment of error is without merit.

## 3. PROBABILITY OF DIFFERENT RESULT

Ariel argues that the alleged newly discovered evidence is not of such a nature that it would likely result in a different outcome.

The newly discovered evidence must be of such character as to reasonably justify a belief that its admission would probably bring about a different result if a new trial were granted. See *Betterman v. Department of Motor Vehicles*, 273 Neb. 178, 728 N.W.2d 570 (2007); *Ipock v. Union Ins. Co.*, 242 Neb. 448, 495 N.W.2d 905 (1993). Such new evidence must not be merely cumulative, but competent, relevant, and material. See *Id.*

Ariel asserts that the discovered text messages merely reinforce the court's prior finding that there existed sufficient evidence to support a reasonable suspicion of inappropriate behavior by Will, prompting her to follow up with abuse investigations and pediatric counseling. She argues that the content of the messages is "merely commutative of the other evidence of (her) concerns," "does not show fabrication, collusion, or conspiracy" by Ariel, and only displays concern for S.G.

Upon our review, we find that the court's determination that the newly discovered evidence could bring about a different result if a new trial were granted did not amount to an abuse of discretion. Significant discretion is granted to trial courts in granting a new trial. The trial court is in a better position to consider witness credibility and understand the circumstances surrounding the evidence at trial. Particularly in a bench trial, the trial judge has a unique perspective on the relationship between the evidence and the judgment. See *Holmes, supra*.

Within its original paternity decree, the court spent considerable time discussing the abuse allegations and investigation initiated by Ariel. While the court found it possible that Ariel overreacted to certain physical conditions, statements, and behavior of S.G. and that Arial may have embellished some of the events, it ultimately determined that there was no family conspiracy to fabricate abuse allegations against Will. The court ultimately found no evidence of inappropriate behavior by Will but also determined it could not say that Ariel's abuse investigations were totally frivolous or unreasonable. The text messages at issue certainly could have supported Will's argument that the abuse investigations were motivated by Ariel's desire to secure custody of S.G. as opposed to any concern for Ariel's safety.

The trial court stated in ruling on the new trial motion that such "conversations alone may have impacted" the court's rationale in determining the reasonableness of the abuse investigations. In so ruling, the court cited to the portion of a text message from Ariel that a meeting with Project Harmony was done for the purpose of seeing "what they're going to be able to do for our case." The court noted Taylor's response that S.G. "didn't seem to be acting that weird though." The court also considered the comments discussing at what age S.G. can decide, with assistance of the play therapist, she no longer wants to visit Will.

Similarly, as acknowledged by the court, Ariel's act of providing S.G. with a device containing accessible sexually explicit photographs could have influenced the court's weighing of custody factors and altered the ultimate decision.

The newly discovered evidence at issue, viewed within the circumstances of this case, reasonably justified the district court's conclusion that its admission could bring about a different result if a new trial were granted. Further, such evidence is not cumulative. It supports the existence of a conspiracy to fabricate abuse allegations against Will, evidence of which was previously insufficient to persuade the trial court. Finally, the availability of explicit photographs to S.G. was entirely new evidence. The collective new evidence was competent, relevant, and material to the

issues of custody and parenting time. Therefore, the court did not abuse its discretion in finding such evidence to support granting a new trial.

Ariel's third assignment of error is without merit.

## VI. CONCLUSION

Upon our review, we find that the district court did not abuse its discretion in granting Will's motion for new trial on the basis of newly discovered evidence. Such evidence was not previously discoverable through the exercise of reasonable diligence, was newly discovered, and of such character as to reasonably warrant a belief that its admission would bring about a different result. Accordingly, we affirm.

AFFIRMED.